No. 40,207

GARY THEODORE WAHL, by DORIS GILBERTSON WAHL, His Guardian, *Appellee*, v. CAPT. THEODORE H. WALSH, *Appellant.*

(304 P. 2d 525)

Opinion filed December 8, 1956.

*William W. Dimmitt, Jr.*, of Topeka, argued the cause, and *Jacob A. Dickinson, David Prager*, and *Sam A. Crow*, all of Topeka, were with him on the brief for the appellant.

*Chas. H. Bradbury*, of Topeka, argued the cause, and *Willard B. Rogers*, also of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action by an illegitimate minor child for support from its putative father. A judgment was rendered against the father and he appeals.

For present purposes it may be said the petition alleged that plaintiff was a minor, age two years, residing in the state of Washington and prosecuted the action by his legally appointed guardian and that the defendant Walsh was his father; that plaintiff had no means to support himself and was too young to work and was in destitute and necessitous circumstances; that defendant, an able-

bodied man regularly employed by the United States Air Force, refused to contribute to plaintiff's support; that a reasonable amount necessary to support plaintiff was $125 per month or $1,500 per year, and that defendant be ordered to pay that amount into court for his support.

The defendant's demurrer to this petition, and by which he made a general appearance, was overruled and on appeal to this court, the ruling and judgment of the trial court was affirmed. See *Wahl v. Walsh,* 177 Kan. 176, 277 P. 2d 623. Thereafter defendant filed his answer denying generally, admitting the guardianship for the minor and alleging that plaintiff and his mother, who is his guardian, were at all times citizens of the state of Washington and non-residents of the state of Kansas; that at all times defendant was a resident and citizen of the state of Louisiana and at the time of service of summons upon him he was an officer in the United States Air Force and temporarily based at Forbes Air Force Base in Shawnee County, Kansas; that he had never been a resident or citizen of the state of Kansas and that he was only in Kansas in connection with his air force service. Defendant also alleged that plaintiff was an illegitimate child of Doris Gilbertson Wahl and that he was not the father of said child.

At a pretrial conference held May 12, 1955, it was stipulated that plaintiff was an illegitimate child of Doris Gilbertson Wahl who had never been married to the defendant; that plaintiff and his mother had never been residents of the state of Kansas and had never been in Kansas; that defendant had never been adjudged in any state or territory of the United States to be the father of the plaintiff; that plaintiff was conceived in the state of Washington and he and his mother were residents of that state, and that service of summons on the defendant was obtained at Forbes Air Force Base while defendant was an active member of the United States Air Force.

A trial was had on October 13, 1955, at which plaintiff introduced further testimony and at which defendant failed to introduce any testimony. The trial court took the cause under consideration and on November 16, 1955, it found that the defendant was the father of the plaintiff and ordered that defendant pay the sum of $100 per month for the support of the child, the first payment to begin as of the date of the judgment and a like sum on the 16th day of each month thereafter until the further order of the court and during the minority of the child.

A motion for a new trial filed by the defendant was denied and he perfected his appeal to this court. His specifications of error cover his contentions later discussed.

The basic question presented by the appellant is: In determining whether the father of an illegitimate child has a nonstatutory duty to support such child, is the law to be applied that of the state in which the plaintiff child is a resident, or the law of the state in which the father is a resident, or the law of any state in which he is served with process? In his argument appellant directs attention to certain decisions of this state and of the state of Washington and to statements to be found in various law treatises, which have been examined, but all of which, in view of our conclusions, need not be discussed. The gist of appellant's argument is that the domicile of an illegitimate child is determined by the domicile of the mother and not by that of the father (*e. g.*, 17 Am. Jur. p. 628); that at common law the putative father was under no obligation to contribute to the support of his illegitimate child (*e. g.*, 7 Am. Jur. 673); that in almost all jurisdictions the question is thought to be one subject to legislative control, and in the absence of statute, the common law is universally applied, and attention is directed to an annotation in 30 A. L. R. 1069, and to the statement therein that this state does not follow the general rule stated, and *Doughty v. Engler*, 112 Kan. 583, 211 Pac. 619, 30 A. L. R. 1065, is cited. Appellant, after some reference to the last mentioned case and to *Myers v. Anderson*, 145 Kan. 775, 67 P. 2d 542, and to comments therein that the rule of the common law, that the father of an illegitimate child is under no legal duty to support it, is unadapted to the conditions and unsuitable to the needs of the people of this state, and that both of the above cases deal with children who were residents of this state, and therefore no question of conflict of laws arose, argues that the plaintiff in the case at bar is a resident of the state of Washington; that under the law of that state no cause of action existed in that state in favor of the present plaintiff against the present defendant (*State v. Tieman*, 32 Wash. 294, 299, 73 Pac. 375, and *Hurst v. Wagner*, 181 Wash. 498, 43 P. 2d 964); that when the situs of a transaction forming the basis of a cause of action is in a state other than that in which the action is instituted and the law of which is in conflict with that of the forum, the general rule as to the law applicable is that the law of the state of the situs of the transaction will control the rights of the parties (14 Am. Jur. 301,

73 A. L. R. 898); that the instant action had its origin in the state of Washington where recovery could not be had, and that the law of that state should have been applied. In an anticipatory way, appellant states appellee will contend that his cause of action was transitory or continuing and lay dormant and did not come into being until the appellant came into Kansas, and that such a theory cannot be upheld; that there must have been a cause of action existing in the state of Washington in order for it to be transitory or continuing, and, as under the laws of that state there was no cause of action, it cannot be said the action was transitory or continuing, citing 1 Am. Jur. 418. The appellant's contentions that the trial court erred in not sustaining his objection to the introduction of evidence at the beginning of the trial, and in not sustaining his demurrer to the appellee's evidence depend, for their validity, upon his being sustained as to his first contention and need no separate discussion.

We need not elaborate on the rule recognized in this state that the father of an illegitimate too young to care for itself is under a nonstatutory obligation to support it, which may be enforced in an action brought by it through its next friend. See *Doughty v. Engler*, and *Myers v. Anderson*, supra. It is true that, as appellant points out, in each of the above cases the child and the putative father both resided in the state of Kansas, and therefore no question was presented as to whether the action might have been maintained had the child been a nonresident. Appellant stresses language to be found in both of the above cases to the effect that the rule of the common law as to support of an illegitimate child is unadapted to the conditions and unsuitable to the needs of the people of this state, and argues that the child must be a resident of or domiciled within the state before the rule of the cited cases can apply. In our opinion the statement as to conditions and needs of the people of this state refers to a cause of action maintainable in this state, and not to the residence or domicile of the plaintiff.

*Moore v. The State, ex rel.*, 47 Kan. 772, 28 Pac. 1072, 17 L. R. A. 714, was a bastardy action. It was there contended this state had no jurisdiction by reason of the fact the mother and her illegitimate child were and always had been nonresidents of this state. This court considered whether the purpose of the statute was to prevent the illegitimate child from being a charge, in which event the action would be local, or was to convert the moral obligation of the father

to support it into a legal duty, in which the action would be transitory, and after extended discussion said it was forced to the conclusion that if the putative father of a bastard child is a resident of this state, the mother can institute proceedings against him under our statute even if the mother and child are residents of another state. Notwithstanding the difference in the nature of that action and the one presently under consideration, it would seem by analogy that if a nonresident mother of a nonresident illegitimate child may maintain an action in bastardy against a resident of this state, an illegitimate child, regardless of its residence in another state, could maintain an action against its father for its support under the rule of *Doughty v. Engler* and *Myers v. Anderson,* supra.

Nor do we think it material that the appellee had no maintainable cause of action against appellant in the state of Washington or in any state other than Kansas of which appellant might have been a resident. When appellant came into this state he became subject to the law of this state. That it is the law of this state that one proven to be the father of an illegitimate child too young to care for itself has the obligation to support it has been demonstrated. If we were to hold that the law were applicable only where the child resided in Kansas, but not applicable otherwise, a discrimination would have to be made that in our judgment would be untenable.

The present action did not arise under any uniform reciprocal enforcement of support act. In 1951 both this state and the state of Washington enacted such legislation. See Revised Code of Washington, Vol. 2, 26.21.010 to 26.21.170, and our G. S. 1951 Supp., 23-401 to 418. Our act was repealed and a new act passed in 1953. See G. S. 1955 Supp., 23-419, *et seq.* Common to all of this legislation are statutory definitions that an "obligor" means any person owing a duty to support and that an "obligee" means any person to whom a duty of support is owed, and it is provided that the duties of support arising under the laws of the state bind the obligor present in the state, regardless of the presence or residence of the obligee (23-422). Conceding, as we do, that relief under the Kansas statute has not been invoked, nor is it applicable here, we cannot overlook the statutory declaration that if a duty of support arises under the law of this state, the obligor is bound regardless of the presence or residence of the obligee in the state.

In our opinion, when a putative father comes into this state, he becomes amenable to the laws of this state and charged with the

support of his child regardless of the presence or residence of the child. Under such circumstances, it is immaterial to our consideration whether he is under any duty to support it under the laws of any other state where the child is present or resides, and, as we view the matter, no question of conflict of laws is involved and we need not discuss that subject.

It has not been made to appear that the trial court erred in its judgment, and that judgment is affirmed.