[No. 42793.   En Banc.   August 1, 1974.]

ROBERTA YETTER, *Appellant,* v. KENNETH H. COMMEAU, *Respondent.*

156

*Christopher T. Bayley, Prosecuting Attorney, Robert L. Burnham, Chief Deputy,* and *Kenneth A. Lee, Deputy,* for appellant.

*R. Wayne Cyphers,* for respondent.

HAMILTON, J.—This is an appeal from the dismissal, on a pretrial motion, of a petition filed under the provisions of the uniform reciprocal enforcement of support act (URESA), RCW 26.21, seeking support for an allegedly illegitimate child. The primary question presented is: May the factual question of paternity, as a prelude to a duty of child support, be resolved in a URESA proceeding?

The trial judge answered in the negative and dismissed the petition. We disagree, reverse and remand.

The operative circumstances, as gleaned from the brief record, are: On September 18, 1972, Ms. Roberta Yetter filed a URESA petition in Snohomish County, Washington. She alleged in the petition that the respondent, Kenneth H. Commeau, residing in King County, Washington, was the natural father of a child born to her on February 27, 1969. She further alleged that she was married to another man at the time of her child's conception and birth, but had been separated from him for some 19 months and had had no marital relations with him for 2 years prior to the birth.

Upon the basis of these allegations, the Superior Court for Snohomish County certified the petition and ordered it transmitted to the Superior Court for King County, pursuant to RCW 26.21.210.[1]

---

[1] "This chapter is applicable when both the petitioner and the respon-

Acting upon the petition, the Superior Court for King County, at the behest of the prosecuting attorney, issued an order directing the respondent to appear and show cause, if any, why the petition should not be granted. Respondent then filed a motion to dismiss, supported by his affidavit in which he denied paternity and asserted the child involved was the issue of appellant's former marriage, which had been dissolved by divorce subsequent to the child's birth.

At the hearing on the motion, it was conceded and agreed between counsel that: (a) the child had not been mentioned in appellant's divorce proceedings; (b) respondent was married to another woman at the time of conception and birth of the child; and (c) no duty of support for the child had been sought or imposed upon respondent pursuant to either a filiation proceeding, RCW 26.24, or the criminal nonsupport statute, RCW 26.20.

In granting respondent's motion to dismiss, the trial judge reasoned that, because there was no common-law duty of support on the part of a putative father of an allegedly illegitimate child, the only duty of such support in this state arose out of either a filiation proceeding or a criminal nonsupport action; hence, until one of such proceedings established paternity and the duty of support, there was no URESA obligation to enforce. In short, he concluded that the URESA neither erected a new or addi-

dent are in this state but in different counties. If the court of the county in which this petition is filed finds that the petition sets forth facts from which it may be determined that the respondent owes a duty of support and finds that a court of another county in this state may obtain jurisdiction of the respondent or his property, the clerk of the court shall send three copies of the petition and a certification of the findings to the court of the county in which the respondent or his property is found. The clerk of the court of the county receiving these copies shall notify the prosecuting attorney of their receipt. The prosecuting attorney and the court in the county to which the copies are forwarded shall then have duties corresponding to those imposed upon them when acting for the state as a responding state." RCW 26.21.210.

tional duty of support on the part of a putative father nor provided a procedure for establishing such.

██ In reaching our conclusion that the trial judge erred in dismissing the petition, we begin with the observation that, commencing in 1950, URESA legislation was enacted in most, if not all, states and territories of the Union. The purpose of such enactments was to provide a uniform, simplified, and convenient method whereby a dependent could obtain needed monetary support from another, obligated to provide such, by an interstate or, with the addition of provisions such as RCW 26.21.210, an intrastate proceeding. Being remedial in nature, such legislation is to be accorded a liberal construction, bearing in mind its humanitarian purpose. Every effort should be made by the courts to render it operable and effective. *Davidson v. Davidson*, 66 Wn.2d 780, 405 P.2d 261 (1965), and cases cited therein.

██ It is manifest, however, that to trigger and sustain a URESA proceeding there must exist an enforceable duty of support on the part of a respondent, and it is equally clear that whether a particular relationship gives rise to such a duty may vary from state to state. *Davidson v. Davidson, supra. See generally* Kelso, *Reciprocal Enforcement of Support: 1958 Dimensions,* 43 Minn. L. Rev. 875 (1959); W. Brockelbank, *Interstate Enforcement of Family Support (The Runaway Pappy Act)* 61-67 (2d ed. F. Infausto 1971); H. Krause, *Illegitimacy: Law and Social Policy* 52 (1971).

Looking then to this state's URESA, we find the following pertinent provisions:

> (6) "Duty of support" includes *any duty* of support imposed *or imposable by law*, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, separate maintenance *or otherwise*.

(Italics ours.) RCW 26.21.010(6);

> The remedies herein provided are *in addition to* and not in substitution for any other remedies.

(Italics ours.) RCW 26.21.020;

> Duties of support applicable under this law are those

imposed *or imposable* under the laws of any state where the obligor was present during the period for which support is sought. . . .

(Italics ours.) RCW 26.21.060;

*All duties of support,* including arrearages are enforceable by action *irrespective of the relationship between the obligor and the obligee.* Jurisdiction of all proceedings hereunder shall be vested in the superior court.

(Italics ours.) RCW 26.21.080.

Reading these provisions in a liberal light consistent with the remedial purposes of the URESA, it appears clear that the legislation undertakes to provide remedies in addition to existent remedies, and contemplates the imposition and enforcement of any duty of support, regardless of the relationship between the obligor and obligee, imposable under the law of the state where the obligor was present during the period for which support is sought.

Since we are concerned here with an intrastate URESA proceeding, the foregoing interpretation of the statutory language perforce posits a threshold question: Is the duty to support an illegitimate child by a putative father a duty "imposable" under the law of this state?

We answer this question in the affirmative, for it is certain that the duty to support illegitimate children is a duty which can be imposed upon a putative father under the law of Washington. This has been established under various statutes, among which is found the filiation statute, RCW 26.24, and the criminal nonsupport statute, RCW 26.20. *State v. Russell,* 68 Wn.2d 748, 415 P.2d 503 (1966). In addition, the proposition finds support in numerous declarations of public policy by this court, as well as the demonstrated concern of this state in the protection of its children. *State v. Bowen,* 80 Wn.2d 808, 498 P.2d 877 (1972); *State v. Coffey,* 77 Wn.2d 630, 465 P.2d 665 (1970); *State v. Schimschal,* 73 Wn.2d 141, 437 P.2d 169 (1968); *State v. Russell, supra; State v. Brown,* 52 Wn.2d 92, 323 P.2d 239 (1958); *Van Tinker v. Van Tinker,* 38 Wn.2d 390, 229 P.2d

333 (1951); *In re Hudson,* 13 Wn.2d 673, 126 P.2d 765 (1942).

■ We note also that the United States Supreme Court, as well as our own state legislature, has given broad cognition to the rights of illegitimate children and their putative fathers in the area of custody proceedings. *See, e.g., Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972); Laws of 1973, ch. 134, § 1, p. 395. It has also been affirmatively held that a denial of the duty to support illegitimate children where the father is legally obligated to support legitimate children is a violation of the equal protection clause of the fourteenth amendment to the United States Constitution. *Gomez v. Perez,* 409 U.S. 535, 35 L. Ed. 2d 56, 93 S. Ct. 872 (1973); *Weber v. Aetna Cas. & Sur. Co.,* 406 U.S. 164, 31 L. Ed. 2d 768, 92 S. Ct. 1400 (1972); *Stanley v. Illinois, supra; Levy v. Louisiana,* 391 U.S. 68, 20 L. Ed. 2d 436, 88 S. Ct. 1509 (1968). The overall effect of these decisions can well be construed as a nullification of the common-law doctrine of *filius nullius* and the offshoots thereof. In any event, we are convinced there can be no doubt that the duty of a putative father to support an illegitimate child or children is clearly one "imposable" under the law of this state.

We come then to the principal issue, *i.e.:* May the factual question of paternity, as a precursor to a duty of support, be resolved in a URESA proceeding?

With respect to this issue, respondent contends that the phrase "imposable by law," as utilized in RCW 26.21.010(6), construed in the overall context of our URESA, imports a requirement that the paternity issue and its resultant duty of support must be established in an independent proceeding, *i.e.,* a filiation or nonsupport action, before the support obligation may be enforced in a URESA proceeding.

In support of his position, respondent points to an amendment to URESA enactments proposed in 1968 by the National Conference of Commissioners on Uniform State

Laws, which has not been adopted in this state. This proposed amendment reads:

> If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both of the parties are present at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary, the court may adjudicate the paternity issue. Otherwise the court may adjourn the hearing until the paternity issue has been adjudicated.

*Uniform Reciprocal Enforcement of Support Act,* Annot., 9 U.L.A. 809, 872 (1973).

Respondent argues that implicit in this proposed amendment, as well as the legislature's failure to adopt it, lies a tacit acknowledgment that the URESA as presently in force in this state does not embrace the resolution of a paternity issue. Additionally, respondent points to cases from other jurisdictions, which stand for the proposition that a responding state court lacks jurisdiction in a URESA proceeding to determine a paternity issue, thereby relegating such determination to a separate proceeding. *Nye v. District Court,* 168 Colo. 272, 450 P.2d 669 (1969); *Aguilar v. Holcomb,* 155 Colo. 530, 395 P.2d 998 (1964); *Smith v. Smith,* 11 Ohio Misc. 25, 224 N.E.2d 925 (1965); *Nickle v. Guarascio,* 28 Utah 2d 425, 503 P.2d 861 (1972).

We cannot agree with respondent or with the cases upon which he relies for a number of reasons.

First, the Commissioners on Uniform State Laws in a prefatory note to the proposed 1968 amendments stated, among other things:

> The new Act has guidelines for the conduct of the trial in the responding state (Sections 21 and 23), for cases where paternity is in issue (Section 28 [*sic*]) or where there has been interference with visitation rights (Section 24) or where it may be desirable to take an appeal (Section 35).

*Uniform Reciprocal Enforcement of Support Act,* Annot., 9 U.L.A. 806 (1973). We take this comment to mean that the

Commissioners recognized that paternity could be an issue in the determination of a duty to support in a URESA proceeding, and simply wished to spell out with a degree of clarity the procedures to be followed in such an event. Furthermore, we feel it safe to assume that the Commissioners were aware that conflicting lines of authority were developing over jurisdictional and procedural questions where paternity became an issue and wished to reiterate in certain terms the original intent and breadth of URESA enactments, *i.e.*, to provide remedies in addition to existent ones for the ascertainment and enforcement of any duty of support, irrespective of the relationship of the obligor and obligee.

Second, in affording our URESA the liberal construction to which it is entitled, we believe the preferred result is that reflected in those jurisdictions which have held that a duty of support in instances such as this need not be established in an independent or ancillary court action, but may be resolved in a URESA proceeding. *In re Miller,* 114 N.Y.S.2d 304 (Child. Ct. 1952); *M— v. W—,* 352 Mass 704, 227 N.E.2d 469 (1967); *Brown v. Thomas,* 221 Tenn. 319, 426 S.W.2d 496 (1968); *Sardonis v. Sardonis,* 106 R.I. 469, 261 A.2d 22 (1970). *See also Wahl v. Walsh,* 180 Kan. 313, 304 P.2d 525 (1956). These decisions more surely reflect the spirit, intent, and social purpose of URESA enactments, and lay to rest any lurking equal protection questions inhering in the narrow construction of the URESA advocated by respondent and adopted by the trial court.

Third, our URESA as it stands is not devoid of procedural guidelines. RCW 26.21.114 and .116 respectively provide:

> The court shall conduct proceedings under this chapter in the manner prescribed by law for an action for enforcement of the type of duty of support claimed.
> If the petitioner is absent from the responding state and the respondent presents evidence which constitutes a defense, the court shall continue the case for further hearing and the submission of evidence by both parties.

RCW 26.21.114 clearly brings into play our civil rules of procedure and those evidentiary standards customarily followed in filiation proceedings. *State v. Kline,* 69 Wn.2d 107, 417 P.2d 348 (1966); *State v. Bowen,* 80 Wn.2d 808, 498 P.2d 877 (1972). RCW 26.21.116 plainly governs the situation where a petitioner is absent from the state, and permits procurement of the petitioner's testimony, where necessary, by way of personal appearance, interrogatories, or deposition. *Lambrou v. Berna,* 154 Me. 352, 148 A.2d 697 (1959). In the light of the guidelines provided by these sections of our URESA, it is understandable that the legislature may not have deemed it necessary to adopt the 1968 amendment proposed by the Commissioners on Uniform State Laws.

In conclusion, it is our firm conviction that the phrase "imposable by law," as utilized in the definition of a duty of support, RCW 26.21.010, cannot properly be construed as respondent advocates.

The order of dismissal is reversed and the cause is remanded for hearing on the merits.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.