[No. 32579-2-III.   Division Three.   October 27, 2015.]

*In the Matter of the Parentage of* O.A.J.

THE STATE OF WASHINGTON, *Respondent*, v. AMY KRISTIN JAMISESON BURNS, *Respondent*, CHRISTOPHER FIDEL LABER, *Appellant*.

*Amy L. Rimov* (of *Amy Rimov JD PS*), for appellant.

*Paul J. Burns*, for respondent Burns.

*Lawrence H. Haskell, Prosecuting Attorney*, and *Darlene A. Chovan-Anderson, Deputy*, for respondent State.

¶1  Korsmo, J. — The father appeals the child support order entered in this paternity action, arguing that the trial court erred in failing to grant a deviation due to his support of another child, erred in its calculation of the mother's income and in imputing income to the mother, and should have explained its rejection of his other arguments. Both parties also request attorney fees for this appeal. We agree in part with his arguments concerning the mother's imputed income and reverse and remand this action for further proceedings.

## FACTS

¶2  O.A.J. is the daughter of Amy Burns and Christopher Laber. The couple, who were not married, separated in 2006 when their daughter was about two. The mother was the primary custodian and moved to Spokane to be with her family, while the father remained in Bellingham. O.A.J. would visit her father in the summers and Mr. Laber made intermittent child support payments to Ms. Burns.[1]

¶3  In 2012, the State brought an action to establish paternity and set past and future child support obligations. The parents agreed that Mr. Laber was the father and also agreed to a parenting schedule. However, the support aspect of the case was heavily contested. The parties disputed their respective incomes and resources and also made claims for deviations from the standard child support schedule.

¶4  Mr. Laber has been employed since 2008 as a machinist in a plant that manufactures airplane parts. His documented earnings were his only source of income. He also argued that his future income would be less than his recent income because he had worked some temporary overtime assignments that would not be continuing.

---

[1] The amount of visitation and the amount of child support previously paid were disputed issues in the trial court but are not issues in this appeal.

¶5 In contrast, the mother's income calculation was much more complicated. She owns at least eight residential properties and has a history of rental income on six of them. However, the rental income on the properties has never exceeded the sum of the interest on the mortgages, depreciation, property tax, and maintenance expenses. She also operates a colon hydrotherapy business, but every year her business expenses exceeded her gross receipts, resulting in her receiving no income from the business. Finally, she also has been employed part time in a law office since at least 2007, working for $13 per hour. When all of this is summed up, Ms. Burns reports negative income every year on her taxes despite gross income in the vicinity of $90,000. Aside from these, the mother reported no other assets, investments, or sources of income. Her stepfather indicated that he helped her with living expenses.

¶6 Mr. Laber argued that Ms. Burns was hiding income, pointing to the facts that she has no consumer debt and had accumulated more than $150,000 in equity on her rental properties. As evidence of additional income, he pointed to the mother's bank account records documenting total annual deposits in excess of the gross receipts reported on her taxes by an average of approximately $80,000. He then argued that the court should consider the excess bank deposits as additional income and the value of her real estate assets as well. In her trial court briefing and declarations, the mother described her finances consistent with her tax returns but never addressed the excess deposits.

¶7 The trial court rejected Mr. Laber's arguments and determined that Ms. Burns had no income. The court then imputed income to her at minimum wage. Mr. Laber requested a deviation downward to account for child support payments he made for his other child, but the court reasoned that his declaration alone provided insufficient proof that he owed a duty of support to that child. The order of child support states: "Deduction for another child was not supported by proof of paternity and a child support order

directed by a Court." Clerk's Papers at 1433. After his motion for reconsideration was denied, Mr. Laber timely appealed to this court.

## ANALYSIS

¶8 We first address Mr. Laber's request for a downward deviation due to his other child, before turning to his arguments that the court erred by imputing income to the mother at minimum wage and by ignoring the additional unexplained funds in her bank account. We then briefly consider together his contentions that the trial court did not explain its reasoning on other matters and the request by both parties that they be awarded attorney fees for this appeal.

■■ ¶9 Initially, we note that this court reviews child support orders for an abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Discretion also is abused when the court uses an incorrect legal standard. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). Substantial evidence must support the trial court's factual findings. *In re Parentage of Goude*, 152 Wn. App. 784, 790, 219 P.3d 717 (2009). This court will not substitute its judgment for trial court judgments if the record shows the court considered all relevant factors and the award is not unreasonable under the circumstances. *Griffin*, 114 Wn.2d at 776.

### *Deviation for Additional Child*

¶10 Mr. Laber argues that he is entitled to a deviation from the support schedule because he has another child and makes support payments for that child. Ms. Burns argues that the deviation was not available because Mr. Laber could not produce a court order to establish that he had a

support obligation. Her argument requires us to construe the meaning of the additional child deviation provision.

¶11 Child support is set by statute, with the support obligation divided proportionately to the parents' respective income levels. RCW 26.19.001, .080(1). The statutes allow the trial court to deviate from the standard schedule and provide a nonexclusive list of reasons for deviation. RCW 26.19.075. Deviation is not allowed if it will leave insufficient funds in the household receiving the support to provide for the basic needs of the children. *Id.* Whenever asked to consider a deviation request, the trial court must explain its rationale for ruling:

> The court shall enter findings that specify reasons for any deviation or any denial of a party's request for any deviation from the standard calculation made by the court. The court shall not consider reasons for deviation until the court determines the standard calculation for each parent.

RCW 26.19.075(3).

██ ¶12 We review the court's deviation request ruling for abuse of discretion. RCW 26.19.075(4); *In re Marriage of Rusch*, 124 Wn. App. 226, 236, 98 P.3d 1216 (2004), *overruled in part on other grounds by In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007). Substantial evidence must support the trial court's factual findings. *Goude*, 152 Wn. App. at 790. This court will not substitute its judgment for trial court judgments if the record shows the court considered all relevant factors and the award is not unreasonable under the circumstances. *Griffin*, 114 Wn.2d at 776.

██ ¶13 The specific deviation at issue here is found in RCW 26.19.075(1). It provides:

> (e) **Children from other relationships.** The court may deviate from the standard calculation *when either or both of the parents before the court have children from other relationships to whom the parent owes a duty of support.*

(i) The child support schedule shall be applied to the mother, father, and children of the family before the court to determine the presumptive amount of support.

(ii) Children from other relationships shall not be counted in the number of children for purposes of determining the basic support obligation and the standard calculation.

(iii) When considering a deviation from the standard calculation for children from other relationships, *the court may consider only other children to whom the parent owes a duty of support*. The court may consider court-ordered payments of child support for children from other relationships only to the extent that the support is actually paid.

(iv) When the court has determined that either or both parents have children from other relationships, deviations under this section shall be based on consideration of the total circumstances of both households. All child support obligations paid, received, and owed for all children shall be disclosed and considered.

(Emphasis added.) This legislation was created by Laws of 1991, 1st Spec. Sess., ch. 28, § 6.

¶14 The concept of "duty of support" is not explained in chapter 26.19 RCW, but is defined in chapter 26.18 RCW, the child support enforcement chapter.

"Duty of support" means the duty to provide for the needs of a dependent child, which may include necessary food, clothing, shelter, education, and health care. The duty includes any obligation to make monetary payments, to pay expenses, including maintenance in cases in which there is a dependent child, or to reimburse another person or an agency for the cost of necessary support furnished a dependent child. *The duty may be imposed by court order, by operation of law, or otherwise.*

RCW 26.18.020(3) (emphasis added). This definition was enacted by Laws of 1984, ch. 260, § 2. The statute sets forth a very broad duty of supporting dependent children, while specifically referencing financial support within that definition. The final sentence of the definition concerning enforceable financial support obligations is primarily at issue in this action.

¶15 The mother reads the sentence as precluding the father from receiving any deviation because he has no duty to support his other child in the absence of a court order. Noting that the "duty of support" obligation is not further defined in chapter 26.19, she argues that the plain language of RCW 26.19.075(1)(e) requires that the obligation be court ordered. The trial court agreed. We believe that position unduly limits the statute's reach.

¶16 Initially, we conclude that the definition of "duty of support" in RCW 26.18.020(3), the child support enforcement statute, does apply to chapter 26.19, the child support statute. Both chapters address the general topic of child support in different areas, with one chapter charged with setting support and the other charged with enforcing it. In order to be effectual, the enforcement statute and the support statute would have to use the same standard. As the enforcement statute predates the current support statute, it also is understandable that the legislature would look to the existing (enforcement) statute when directing courts on how to measure the support obligation.[2] The question then presented by this case involves the meaning of the final sentence of the "duty of support" definition.

¶17 The phrase "duty of support" has a long history in our statutes. The first codification of that phrase appears to have occurred when Washington adopted the "Uniform Reciprocal Enforcement of Support Act" (URESA), former chapter 26.21 RCW (1992). *See* LAWS OF 1951, ch. 196, §§ 2, 7. Those sections provided definitions of the concept.

> (6) "Duty of support" includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, separate maintenance or otherwise.

*Id.* § 2 (formerly codified at RCW 26.21.010(6) (1972)).

---

[2] There is ample history of using chapter 26.18 RCW to enforce orders entered under chapter 26.19 RCW. *E.g.*, *In re Marriage of Briscoe*, 134 Wn.2d 344, 350, 949 P.2d 1388 (1998) (Talmadge, J., dissenting).

¶18 Similarly, § 7 of URESA as adopted in Washington provided:

> Duties of support enforceable under this law are those imposed or imposable under the laws of any state where the alleged obligor was present during the period for which support is sought or where the obligee was present when the failure to support commenced, at the election of the obligee.

*Id.* § 7 (formerly codified at RCW 26.21.060 (1963)).

¶19 The meaning of these provisions was at issue in *Yetter v. Commeau*, 84 Wn.2d 155, 524 P.2d 901 (1974). There a woman in Snohomish County sued a man from King County for support of her child born when both individuals were married to other people. *Id.* at 156. The question presented was whether URESA also could be used to determine paternity as a prelude to a support order. *Id.* The court first noted that URESA left to the states the question of defining the relationships that triggered a duty of support. *Id.* at 158. Washington long had a policy of requiring fathers to support "illegitimate children." *Id.* at 159. Since the putative fathers could be required to provide support, it was a duty "imposable by law" in Washington. *Id.* at 159-61. Therefore, URESA could be used to determine paternity. *Id.* at 160-63.

¶20 While the child support chapter does not use the flexible "imposable by law"[3] standard that was dispositive in *Yetter*, that case is still instructive here. Even though URESA was interpreted to permit actions outside its express terms—determine paternity instead of merely determine support—the mechanism employed was still a formal process. A court would hear the evidence and make a paternity determination before awarding support, if applicable. That formality is the key to reading the enforcement statute definition "imposed by court order, by operation of law, or otherwise." RCW 26.18.020(3).

---

[3] The phrase is still used in URESA's successor statute, the Uniform Interstate Family Support Act. *See* RCW 26.21A.010(3).

¶21 The definition urged by Ms. Burns and accepted by the trial court ignores the "operation of law, or otherwise" alternatives. There are several methods by which paternity can be established—and thus give rise to a duty of support—other than by court order. For instance, a man can acknowledge paternity, RCW 26.26.300 et seq., or presumptively be a father by the fact of marriage at the time of the child's birth. RCW 26.26.116(1)(a). These are examples of "operation of law." Similarly, a support obligation can be imposed in an administrative proceeding—another "operation of law." WAC 388-14A-3100. The meaning of "or otherwise" is harder to discern. One potential "otherwise" might consist of a written contract between an unmarried couple setting forth their respective child support obligations.

¶22 Because chapter 26.18 RCW is a mechanism by which courts can enforce the support obligation, there must be sufficient formality to the obligation that a court has something to enforce. That is the essence of the statutory provision. And it is the reason that we agree with the trial court's decision to deny the deviation request. We hold that to obtain a deviation from the child support guidelines due to paying for the support of children from other relationships, the parent must establish the existence of a judicially enforceable support obligation concerning those children.

¶23 Mr. Laber failed to identify any enforceable support obligation for his other child. The trial court, therefore, correctly denied his request to deviate from the standard support obligation.

*Mother's Imputed Income*

¶24 Mr. Laber next argues that the trial court erred by imputing income to the mother at minimum wage. We agree. The statute sets forth a hierarchy for imputing wages. Because Ms. Burns earned more than minimum wage when she worked, the trial court erred in imputing income at that level.

¶25 RCW 26.19.071 states in relevant part:

(6) **Imputation of income.** The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. . . . In the absence of records of a parent's actual earnings, the court *shall impute a parent's income in the following order of priority*:

(a) Full-time earnings at the current rate of pay;

(b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;

(c) Full-time earnings at a past rate of pay where information is incomplete or sporadic;

(d) Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, is recently coming off public assistance, aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a high school student;

(e) Median net monthly income of year-round full-time workers.

(Emphasis added.) A court's decision on imputation of income due to voluntary underemployment is reviewed for abuse of discretion. *In re Marriage of Wright*, 78 Wn. App. 230, 234, 896 P.2d 735 (1995).

¶26 The statute expressly sets a priority order for the court to apply when imputing income to a parent: current rate of pay, historic rate of pay based on reliable information, historic rate based on incomplete information, minimum wage, and median monthly income. The evidence in the record established that the mother was currently receiving $13 per hour for her part time work at the law office and had received that wage since 2007. As "current rate of pay" is the first priority in the statutory hierarchy, $13 should have been the figure used when imputing the mother's income.

¶27 By failing to follow the statutory priority order, the trial court abused its discretion in using the fourth option. *Rundquist*, 79 Wn. App. at 793. Accordingly, we reverse the order of support and remand for recalculation of the mother's income applying the correct current rate of pay.

¶28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BROWN, A.C.J., and FEARING, J., concur.