IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parentage of: | ) | |
| | ) | No. 32579-2-III |
| O.A.J., | ) | |
| a minor. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | OPINION PUBLISHED IN PART |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMY KRISTIN JAMISESON BURNS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| CHRISTOPHER FIDEL LABER, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — The father appeals the child support order entered in this paternity

action, arguing that the trial court erred in failing to grant a deviation due to his support

of another child, erred in its calculation of the mother's income and in imputing income

to the mother, and should have explained its rejection of his other arguments. Both

parties also request attorney fees for this appeal. We agree in part with his arguments

concerning the mother's imputed income and reverse and remand this action for further

proceedings.

FACTS

O.A.J. is the daughter of Amy Burns and Christopher Laber. The couple, who were not married, separated in 2006 when their daughter was about two. The mother was the primary custodian and moved to Spokane to be with her family, while the father remained in Bellingham. O.A.J. would visit her father in the summers and Mr. Laber made intermittent child support payments to Ms. Burns.[1]

In 2012, the State brought an action to establish paternity and set past and future child support obligations. The parents agreed that Mr. Laber was the father and also agreed to a parenting schedule. However, the support aspect of the case was heavily contested. The parties disputed their respective incomes and resources and also made claims for deviations from the standard child support schedule.

Mr. Laber has been employed since 2008 as a machinist in a plant that manufactures airplane parts. His documented earnings were his only source of income. He also argued that his future income would be less than his recent income because he had worked some temporary overtime assignments that would not be continuing.

In contrast, the mother's income calculation was much more complicated. She owns at least eight residential properties, and has a history of rental income on six of them. However, the rental income on the properties has never exceeded the sum of the

---

[1] The amount of visitation and the amount of child support previously paid were disputed issues in the trial court, but are not issues in this appeal.

2

interest on the mortgages, depreciation, property tax, and maintenance expenses. She also operates a colon hydrotherapy business, but every year her business expenses exceeded her gross receipts, resulting in her receiving no income from the business. Finally, she also has been employed part-time in a law office since at least 2007 working for $13 per hour. When all of this is summed up, Ms. Burns reports negative income every year on her taxes despite gross income in the vicinity of $90,000. Aside from these, the mother reported no other assets, investments, or sources of income. Her stepfather indicated that he helped her with living expenses.

Mr. Laber argued that Ms. Burns was hiding income, pointing to the facts that she has no consumer debt, and had accumulated more than $150,000 in equity on her rental properties. As evidence of additional income, he pointed to the mother's bank account records documenting total annual deposits in excess of the gross receipts reported on her taxes by an average of approximately $80,000. He then argued that the court should consider the excess bank deposits as additional income and the value of her real estate assets as well. In her trial court briefing and declarations, the mother described her finances consistent with her tax returns, but never addressed the excess deposits.

The trial court rejected Mr. Laber's arguments and determined that Ms. Burns had no income. The court then imputed income to her at minimum wage. Mr. Laber requested a deviation downward to account for child support payments he made for his other child, but the court reasoned that his declaration alone provided insufficient proof

3

that he owed a duty of support to that child. The order of child support states:

"Deduction for another child was not supported by proof of paternity and a child support order directed by a Court." Clerk's Papers (CP) at 1433. After his motion for reconsideration was denied, Mr. Laber timely appealed to this court.

## ANALYSIS

We first address Mr. Laber's request for a downward deviation due to his other child, before turning to his arguments that the court erred by imputing income to the mother at minimum wage and by ignoring the additional unexplained funds in her bank account. We then briefly consider together his contentions that the trial court did not explain its reasoning on other matters and the request by both parties that they be awarded attorney fees for this appeal.

Initially, we note that this court reviews child support orders for an abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Discretion also is abused when the court uses an incorrect legal standard. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). Substantial evidence must support the trial court's factual findings. *In re Parentage of Goude*, 152 Wn. App. 784, 790, 219 P.3d 717 (2009). This court will not substitute its judgment for trial court judgments if the record

shows the court considered all relevant factors and the award is not unreasonable under the circumstances. *Griffin*, 114 Wn.2d at 776.

*Deviation for Additional Child*

Mr. Laber argues that he is entitled to a deviation from the support schedule because he has another child and makes support payments for that child. Ms. Burns argues that the deviation was not available because Mr. Laber could not produce a court order to establish that he had a support obligation. Her argument requires us to construe the meaning of the additional child deviation provision.

Child support is set by statute with the support obligation divided proportionately to the parents' respective income levels. RCW 26.19.001, .080(1). The statutes allow the trial court to deviate from the standard schedule and provide a nonexclusive list of reasons for deviation. RCW 26.19.075. Deviation is not allowed if it will leave insufficient funds in the household receiving the support to provide for the basic needs of the children. *Id.* Whenever asked to consider a deviation request, the trial court must explain its rationale for ruling:

> The court shall enter findings that specify reasons for any deviation or any denial of a party's request for any deviation from the standard calculation made by the court. The court shall not consider reasons for deviation until the court determines the standard calculation for each parent.

RCW 26.19.075(3).

We review the court's deviation request ruling for abuse of discretion. RCW 26.19.075(4); *In re Marriage of Rusch*, 124 Wn. App. 226, 236, 98 P.3d 1216 (2004), *overruled in part on other grounds by In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007). Substantial evidence must support the trial court's factual findings. *Goude*, 152 Wn. App. at 790. This court will not substitute its judgment for trial court judgments if the record shows the court considered all relevant factors and the award is not unreasonable under the circumstances. *Griffin*, 114 Wn.2d at 776.

The specific deviation at issue here is found in RCW 26.19.075(1). It provides:

> (e) **Children from other relationships.** The court may deviate from the standard calculation <u>when either or both of the parents before the court have children from other relationships to whom the parent owes a duty of support.</u>
>    (i) The child support schedule shall be applied to the mother, father, and children of the family before the court to determine the presumptive amount of support.
>    (ii) Children from other relationships shall not be counted in the number of children for purposes of determining the basic support obligation and the standard calculation.
>    (iii) When considering a deviation from the standard calculation for children from other relationships, <u>the court may consider only other children to whom the parent owes a duty of support.</u> The court may consider court-ordered payments of child support for children from other relationships only to the extent that the support is actually paid.
>    (iv) When the court has determined that either or both parents have children from other relationships, deviations under this section shall be based on consideration of the total circumstances of both households. All

child support obligations paid, received, and owed for all children shall be disclosed and considered.

(Emphasis added.) This legislation was created by Laws of 1991, 1st Spec. Sess., ch. 28, § 6.

The concept of "duty of support" is not explained in chapter 26.19 RCW, but is defined in chapter 26.18 RCW, the child support enforcement chapter.

> "Duty of support" means the duty to provide for the needs of a dependent child, which may include necessary food, clothing, shelter, education, and health care. The duty includes any obligation to make monetary payments, to pay expenses, including maintenance in cases in which there is a dependent child, or to reimburse another person or an agency for the cost of necessary support furnished a dependent child. The duty may be imposed by court order, by operation of law, or otherwise.

RCW 26.18.020(3) (emphasis added). This definition was enacted in by Laws of 1984, ch. 260, § 2. The statute sets forth a very broad duty of supporting dependent children, while specifically referencing financial support within that definition. The final sentence of the definition concerning enforceable financial support obligations is primarily at issue in this action.

The mother reads the sentence as precluding the father from receiving any deviation because he has no duty to support his other child in the absence of a court order. Noting that the "duty of support" obligation is not further defined in chapter 26.19, she argues that the plain language of RCW 26.19.075(1)(e) requires that the

obligation be court-ordered. The trial court agreed. We believe that position unduly limits the statute's reach.

Initially, we conclude that the definition of "duty of support" in RCW 26.18.020(3), the child support enforcement statute, does apply to chapter 26.19, the child support statute. Both chapters address the general topic of child support in different areas, with one chapter charged with setting support and the other charged with enforcing it. In order to be effectual, the enforcement statute and the support statute would have to use the same standard. As the enforcement statute predates the current support statute, it also is understandable that the legislature would look to the existing (enforcement) statute when directing courts on how to measure the support obligation.[2] The question then presented by this case involves the meaning of the final sentence of the "duty of support" definition.

The phrase "duty of support" has a long history in our statutes. The first codification of that phrase appears to have occurred when Washington adopted the "Uniform Reciprocal Enforcement of Support Act" (URESA) former ch. 26.21 RCW (1992). *See* Laws of 1951, ch. 196, §§ 2, 7. Those sections provided definitions of the concept.

---

[2] There is ample history of using chapter 26.18 RCW to enforce orders entered under chapter 26.19. *E.g., In re Marriage of Briscoe*, 134 Wn.2d 344, 350, 949 P.2d 1388 (1998) (Talmadge, J., dissenting).

8

> "Duty of support" includes any duty of support imposed or imposable by law, or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, separate maintenance or otherwise.

*Id.* § 2 (formerly codified at RCW 26.21.010(6) (1992)).

Similarly, § 7 of URESA as adopted in Washington provided:

> Duties of support enforceable under this law are those imposed or imposable under the laws of any state where the alleged obligor was present during the period for which support is sought or where the obligee was present when the failure to support commenced, at the election of the obligee.

(formerly codified at RCW 26.21.060 (1992)).

The meaning of these provisions was at issue in *Yetter v. Commeau*, 84 Wn.2d 155, 524 P.2d 901 (1974). There a woman in Snohomish County sued a man from King County for support of her child born when both individuals were married to other people. *Id.* at 156. The question presented was whether URESA also could be used to determine paternity as a prelude to a support order. *Id.* The court first noted that URESA left to the states the question of defining the relationships that triggered a duty of support. *Id.* at 158. Washington long had a policy of requiring fathers to support "illegitimate children." *Id.* at 159. Since the putative fathers could be required to provide support, it was a duty "imposable by law" in Washington. *Id.* at 159-61. Therefore, URESA could be used to determine paternity. *Id.* at 160-63.

While the child support chapter does not use the flexible "imposable by law"[3] standard that was dispositive in *Yetter*, that case is still instructive here. Even though URESA was interpreted to permit actions outside its express terms—determine paternity instead of merely determine support—the mechanism employed was still a formal process. A court would hear the evidence and make a paternity determination before awarding support, if applicable. That formality is the key to reading the enforcement statute definition "imposed by court order, by operation of law, or otherwise." RCW 26.18.020(3).

The definition urged by Ms. Burns and accepted by the trial court ignores the "operation of law, or otherwise" alternatives. There are several methods by which paternity can be established—and thus give rise to a duty of support—other than by court order. For instance, a man can acknowledge paternity, RCW 26.26.300 et seq., or presumptively be a father by the fact of marriage at the time of the child's birth. RCW 26.26.116(1)(a). These are examples of "operation of law." Similarly, a support obligation can be imposed in an administrative proceeding—another "operation of law." WAC 388-14A-3100. The meaning of "or otherwise" is harder to discern. One potential "otherwise" might consist of a written contract between an unmarried couple setting forth their respective child support obligations.

---

[3] The phrase is still used in URESA's successor statute, the Uniform Interstate Family Support Act. *See* RCW 26.21A.010(3).

10

Because RCW 26.18 is a mechanism by which courts can enforce the support obligation, there must be sufficient formality to the obligation that a court has something to enforce. That is the essence of the statutory provision. And it is the reason that we agree with the trial court's decision to deny the deviation request. We hold that to obtain a deviation from the child support guidelines due to paying for the support of children from other relationships, the parent must establish the existence of a judicially enforceable support obligation concerning those children.

Mr. Laber failed to identify any enforceable support obligation for his other child. The trial court, therefore, correctly denied his request to deviate from the standard support obligation.

*Mother's Imputed Income*

Mr. Laber next argues that the trial court erred by imputing income to the mother at minimum wage. We agree. The statute sets forth a hierarchy for imputing wages. Because Ms. Burns earned more than minimum wage when she worked, the trial court erred in imputing income at that level.

RCW 26.19.071 states in relevant part:

> (6) **Imputation of income.** The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. . . . In the absence of records of a parent's actual earnings, the court shall impute a parent's income in the following order of priority:
> (a) Full-time earnings at the current rate of pay;
> (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;

11

(c) Full-time earnings at a past rate of pay where information is incomplete or sporadic;

(d) Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, is recently coming off public assistance, aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a high school student;

(e) Median net monthly income of year-round full-time workers.

(Emphasis added.) A court's decision on imputation of income due to voluntary underemployment is reviewed for abuse of discretion. *In re Marriage of Wright*, 78 Wn. App. 230, 234, 896 P.2d 735 (1995).

The statute expressly sets a priority order for the court to apply when imputing income to a parent: current rate of pay, historic rate of pay based on reliable information, historic rate based on incomplete information, minimum wage, and median monthly income. The evidence in the record established that the mother was currently receiving $13 per hour for her part time work at the law office and had received that wage since 2007. As "current rate of pay" is the first priority in the statutory hierarchy, $13 should have been the figure used when imputing the mother's income.

By failing to follow the statutory priority order, the trial court abused its discretion in using the fourth option. *Rundquist*, 79 Wn. App. at 793. Accordingly, we reverse the order of support and remand for recalculation of the mother's income applying the correct current rate of pay.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

*Other Income*

The father strenuously argues that the trial court erred in failing to account for the unexplained additional monies found annually in the checking accounts. We are not in a position to resolve the claim due to the status of the record, but we leave the matter to the discretion of the trial court in the remand required by the imputed income ruling.

When calculating the child support obligation, the court begins by considering all "income and resources of each parent's household." RCW 26.19.071(1). "Income" is not defined in the statute, but the statute does explain various sources of gross income that either must be considered (RCW 26.19.071(3)) or not considered (RCW 26.19.071(4)). Important in this action is the requirement that gross income include:

> Income from self-employment, rent, royalties, contracts, proprietorship of a business, or joint ownership of a partnership or closely held corporation.

RCW 26.19.071(3)(u). The self-employed are permitted to deduct their normal business expenses from the gross income.[4] RCW 26.19.071(5)(h).

---

[4] Although this issue was contested in the trial court, the father does not renew those arguments here.

13

Ms. Burns appears to have run both her business and personal finances through the same accounts. That fact complicates the analytical challenge facing the trial court and the father. However, he argues, and the record supports the contention, that approximately $80,000 more each year passed through the checking accounts than is accounted for in the gross business income reflected in the tax returns. Money in a checking account is not necessarily "income," but it may reflect income or an existing asset.[5] All assets must be reported to the court. RCW 26.19.071(1). Although assets are not used in calculating support obligations, they can be a basis for deviating from the support schedule. RCW 26.19.075(1)(vi). Accordingly, the trial court's characterization of this money was important to the father.

Unfortunately, the record of this appeal does not reflect the trial court's resolution of this contention. It is the burden of the party presenting an issue to ensure that the record is adequate for review. *State v. Rienks*, 46 Wn. App. 537, 544-45, 731 P.2d 1116 (1987). Here that failure falls on the appellant's shoulders. Based on the reconsideration documents, it appears that the trial court provided some answers to the question, but this court has not been provided that reasoning. Accordingly, we are not in a position to review the claim of trial court error.

---

[5] It might also reflect simple cash flow patterns between existing accounts in which the same money returns again and again to the account, or some similar innocent concern. We do not suggest there is anything untoward occurring.

14

Nonetheless, this is a potentially significant issue that was properly raised[6] to the trial court. Since the matter is being returned to the trial court due to the imputed income problem, we leave to the discretion of the trial judge, or her successor, whether to reconsider the matter during its next effort at computing income. If the court was able to successfully characterize this anomaly in the original action, it need not revisit the issue. If the court did not answer the question previously, it should undertake to do so on remand.

*Remaining Matters*

The father also argues that the trial court erred in not explaining its apparent rejection of his "equitable" arguments such as a request for an offset against back support obligations for the time the child spent with him each summer. However, he has presented insufficient argument for us to consider the claims. Both parties also ask for attorney fees. We decline the respective requests.

With respect to the "equitable" arguments contention, the father argues that since he put the issues properly before the trial court, it was therefore required to make findings of fact and conclusions of law concerning his arguments. The failure to do so, he

---

[6] The father met his burden of identifying the discrepancy and putting it before the court, requiring the court to characterize the funds. At that point the mother also was free to explain the matter to the judge.

reasons, leaves this court unable to consider the issues and we should remand for the trial court to address his arguments. This argument fails on several grounds.

First, the father has not established that the trial court failed to enter any findings of fact or conclusions of law that it was required to enter. Findings typically need only be entered when a court rule or statute requires them. For instance, a request for a deviation from the support schedule triggers a statutory duty for the trial court to explain why it did or did not grant the deviation. RCW 26.19.075(3). While there are many instances in which findings would facilitate appellate review, they are only required in specified instances. The father has not demonstrated that any of his arguments were subject to mandatory findings.

Second, the father was free to present his arguments to this court on the merits since he presented them to the trial court. Having preserved the issues by presenting supporting evidence and arguing them, he was then free to assign error to the court's rejection of his claims (or any refusal to act) and argue the merits of those claims here. RAP 10.3(a)(4), (6). In the event the trial court failed to perform some action required of it, this court could remand for consideration of the claim. In most instances, however, this court would be able to address the merits of the claim and order relief when significant error was established.

However, the father did not assign error to any of the issues that he argues the trial judge should have more fully addressed. We therefore are not in a position to assess the

16

No. 32579-2-III
*In re the Parentage of O.A.J.*

merits of his claims. "The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). The "equitable" arguments contention is simply unreviewable here.

The mother argues that she should receive attorney fees for responding to a frivolous appeal. In view of the fact that the father prevailed on the imputed income argument, we cannot say that his appeal was frivolous. The father, in turn, seeks attorney fees under both RCW 26.09.140 and RCW 26.26.140. Both statutes permit a court to exercise discretion to award attorney fees in, respectively, dissolution or paternity actions. Without deciding whether the dissolution attorney fees statute could be applied in a paternity action, we decline to award attorney fees under either statute.

The support award is reversed and the matter remanded for further proceedings consistent with this opinion.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Fearing, J.

17