# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of | No.  47181-7-II |
| JENNIFER J. ZACAPU, | |
| Appellant, | |
| and | |
| ANDRES ZACAPU-OLIVER, | PUBLISHED OPINION |
| Respondent. | |

WORSWICK, J. — Jennifer Zacapu appeals from an order revising Andres Zacapu-Oliver's child support obligation and from the final child support order. Jennifer[1] contends that the trial court erred by deviating from the standard calculation of Andres's child support obligation based on his duty to support six stepchildren residing in his home. We affirm.

### FACTS

Jennifer and Andres dissolved their marriage in 2012. At the time of their marriage dissolution, Jennifer and Andres had two minor children in common: a daughter who resided with Andres and a son who resided with Jennifer. Andres's child support obligation to his son was calculated at $127.41 per month.

---

[1] Because the parties share a last name, this opinion refers to the parties by their first names for clarity, intending no disrespect.

In August 2014, Jennifer requested a review of the 2012 child support order based on her and Andres's daughter turning 18 and graduating from high school. In September, the State moved for an order modifying the parties' child support obligations under RCW 26.09.170(9) and RCW 26.09.175(3).[2] The State calculated Andres's monthly net income at $3,745 and Jennifer's monthly net income at $2,047. The State also calculated Andres's standard child support obligation at $524 per month. Neither party disputed these calculations, but Andres requested a downward deviation based on his duty to care for six stepchildren residing in his home.

A superior court commissioner heard the State's motion on December 1 and, on that same date, entered a final order of child support. The December 1 order adopted the State's calculations and directed Andres to pay his full standard calculation of $524 per month in child support.[3] In ordering Andres to pay $524 per month in child support, the commissioner found that "no good reason exist[ed] to justify deviation" from the standard child support calculation. Clerk's Papers (CP) at 134.

Andres moved to revise the December 1 child support order, asserting that the commissioner's refusal to order a downward deviation resulted in insufficient income to support his eight person household. The trial court heard arguments from counsel on January 9, 2015.

---

[2] RCW 26.09.170(9)(b) and RCW 26.09.175(3)(b) provide in relevant part that the State "department of social and health services may file an action to modify or adjust an order of child support . . . if . . . [a] party to the order in a nonassistance case has requested a review."

[3] The December 1 order imposed an incremental increase in Andres's child support obligation, ordering him to pay $325.50 per month starting November 1, 2014 and increasing the obligation to $524.00 per month on May 1, 2015.

On that same date, the trial court entered an order granting Andres's revision motion. The order granting a revision imposed on Andres a $324 per month child support obligation effective November 1, 2014, and increased the obligation to $350 effective February 1, 2015.

The trial court entered its final child support order on March 20, 2015, which final order comported with its earlier revision order. This final order provided:

> The Respondent is the step-parent of the six (6) children of his wife, Maria Zacapu. These children reside with Respondent and his Wife. Pursuant to RCW 26.19.075(e), the Court may deviate from the standard calculation when a parent has children from other relationships to whom the parent owes a duty of support. The Court FINDS a deviation is appropriate in this case because Respondent has a duty of support to his step-children pursuant to RCW 26.16.205. The Court considered the parties['] financial declarations and further FINDS that if a deviation is not granted there will be insufficient income in Respondent's household for his family of eight. If Respondent's marital situation changes, this deviation may be reviewed.

CP at 167. Jennifer appeals from the January 9 revision order and from the March 20 final child support order.

## ANALYSIS

Jennifer asserts that the trial court erred by granting a deviation from Andres's standard child support calculation because it lacked discretion to order a deviation based on a parent's duty to support stepchildren. Jennifer also asserts in the alternative that, even if the trial court had discretion to order a deviation based on a parent's duty to support stepchildren, it abused its discretion here. On both points, we disagree.

### I. STANDARD OF REVIEW

Trial courts are afforded considerable discretion in setting and modifying child support orders, which orders we seldom disturb on appeal. *In re Marriage of Griffin*, 114 Wn.2d 772,

3

776, 791 P.2d 519 (1990); *In re Marriage of Schumacher*, 100 Wn. App. 208, 211, 997 P.2d 399 (2000). To prevail, Jennifer bears the heavy burden of showing that the trial court's decision to deviate from the standard calculation of Andres's child support obligation was a manifest abuse of discretion. *Griffin*, 114 Wn.2d at 776. A manifest abuse of discretion exists if a trial court exercises its discretion on untenable grounds. *In re Marriage of Harrington*, 85 Wn. App. 613, 624, 935 P.2d 1357 (1997). A trial court also abuses its discretion by misinterpreting a statute. *Diaz v. State*, 175 Wn.2d 457, 462, 285 P.3d 873 (2012) (citing *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)). Interpretation of a statute is a question of law that we review de novo. *In re Marriage of Caven*, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998).

## II. DISCRETION TO ORDER CHILD SUPPORT DEVIATION BASED ON DUTY TO SUPPORT STEPCHILDREN

Jennifer first asserts that the trial court erred by concluding that the child support deviation statute, RCW 26.19.075, permitted it to order a deviation based on Andres's duty to support his six stepchildren. We disagree.

When construing a statute, our fundamental purpose is to ascertain and carry out the legislature's intent. *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). We determine the legislature's intent primarily from the language of the statute. *Schneider*, 173 Wn.2d at 363. And where a statute's language is plain and unambiguous, "we will give effect to the plain meaning of the statutory language." *Schneider*, 173 Wn.2d at 363.

RCW 26.19.075(1)(e) provides:

> **Children from other relationships.** The court may deviate from the standard calculation when either or both of the parents before the court have children from other relationships to whom the parent owes a duty of support.

4

Jennifer argues that, under RCW 26.19.075(1)(e), "children from other relationships" includes only biological children because the statute does not explicitly reference stepchildren. This argument overlooks that the statute also does not explicitly reference biological children. And we lack authority to import language into a statute that our legislature chose not to include. *See Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 920, 215 P.3d 185 (2009). In the absence of language limiting the class of "children" to which RCW 26.19.075(1)(e) applies, the statute's use of the term "children" plainly includes *all* children "to whom the parent owes a duty of support," regardless of whether the children are biologically related to the parent. Accordingly, when determining whether RCW 26.19.075(1)(e) applies to its deviation decision, a trial court need only determine whether the parent requesting a deviation under this subsection owes a duty of support to children from another relationship, without regard to the biological relationship of the requesting parent and the claimed children from another relationship.

RCW 26.18.020(3) defines "[d]uty of support" as

> the duty to provide for the needs of a dependent child, which may include necessary food, clothing, shelter, education, and health care. The duty includes any obligation to make monetary payments, to pay expenses, including maintenance in cases in which there is a dependent child, or to reimburse another person or an agency for the cost of necessary support furnished a dependent child. The duty may be imposed by court order, by operation of law, or otherwise.

This definition applies to the deviation statute. *In re Parentage of O.A.J.*, ___ Wn. App. ___, 363 P.3d 1, 4 (2015). Division Three of this Court recently held that, under this definition, a parent seeking a deviation under RCW 26.19.075(1)(e) need only "establish the existence of a

5

judicially enforceable support obligation concerning [children from other relationships]." *O.A.J.*, 363Wn. App. at 5. We agree and adopt Division Three's reasoning in *O.A.J.*

Here, the trial court concluded that Andres had a judicially enforceable obligation to support his six stepchildren under RCW 26.16.205. RCW 26.16.205 provides:

> **Liability for family support—Support obligation of stepparent.** The expenses of the family and the education of the children, *including stepchildren*, are chargeable upon the property of both spouses or both domestic partners, or either of them, and they may be sued jointly or separately. When a petition for dissolution of marriage or state registered domestic partnership or a petition for legal separation is filed, the court may, upon motion of the stepparent, terminate the obligation to support the stepchildren. The obligation to support stepchildren shall cease upon the entry of a decree of dissolution, decree of legal separation, or death.

(Emphasis added.) Under this statute, a stepparent is liable for the family and education expenses of his or her stepchildren.[4] RCW 26.16.205 thus imposes on Andres a judicially enforceable obligation to support the dependent minor stepchildren living in his home. *See Harmon v. Dep't of Soc. and Health Servs.*, 134 Wn.2d 523, 542, 951 P.2d 770 (1998) (stating conditions upon which a stepparent's duty to support stepchildren under RCW 26.16.205 terminates). Accordingly, we hold that the trial court did not err by concluding that it had

---

[4] Under RCW 26.16.205, a stepparent's obligation to provide for the family and education expenses of stepchildren continues until the entry of a dissolution decree or legal separation decree. The obligation may also be terminated by court order upon the filing of a dissolution petition or legal separation petition. Additionally, pursuant to *Harmon v. Dep't of Soc. and Health Servs.*, 134 Wn.2d 523, 542, 951 P.2d 770 (1998), a stepparent's obligation to his or her stepchildren may also terminate "when the child reaches the age of majority, is married, emancipated or otherwise no longer dependent." In apparent recognition of the terminable nature of this obligation, the trial court stated in its final child support order, "If Respondent's marital situation changes, this deviation may be reviewed." CP at 167.

discretion to order a deviation under RCW 26.19.075(1)(e) based on Andres's duty to support dependent minor stepchildren under RCW 26.16.205.[5]

Jennifer contends that *Harmon* supports her argument that RCW 26.19.075(1)(e) does not apply to stepchildren from other relationships. She is incorrect. In *Harmon*, our Supreme Court addressed (1) whether RCW 26.16.205 "imposes a child support obligation on a stepparent that is equal to that of the child's parents" and (2) whether RCW 26.16.205 provides the exclusive means of terminating a stepparent's child support obligation. 134 Wn.2d at 541. Regarding the first issue, the court held that the statute did not impose an equal child support obligation upon parents and stepparents but that "the Legislature intended *only* to distinguish between parents and stepparents to the extent that the obligation, once assumed, would not continue for stepparents beyond the termination of marriage." *Harmon*, 134 Wn.2d at 542 (emphasis added). The *Harmon* court noted that, unlike a stepparent, "[t]he parent's obligation for the support of a child continues and is not dependent on the continuation of the marital relationship." 134 Wn.2d at 542.

Regarding the second issue, the *Harmon* court held that, "[n]otwithstanding the statute's specific and limiting language, any support obligation for a child may terminate when the child reaches the age of majority, is married, emancipated or otherwise no longer dependent." 134 Wn.2d 542. Our Supreme Court's analysis of when a stepparent's obligation to support his or

---

[5] Because we hold that the trial court properly found that Andres's had a statutory duty to support his stepchildren under RCW 26.16.205, we do not consider his alternative argument that he also had a duty to provide for his stepchildren as a stepparent standing in loco parentis to the children.

her stepchildren under RCW 26.16.205 may terminate has no bearing on whether a trial court may consider the statutory obligation when ordering a deviation under RCW 26.19.075(1)(e). Accordingly, Jennifer's reliance on *Harmon* is misplaced.

We hold that the trial court had discretion to order the child support deviation based on Andres's duty to support his stepchildren.

### III. NO ABUSE OF DISCRETION

Next, Jennifer argues that the trial court abused its discretion by ordering a deviation from Andres's standard calculation of $524 in monthly child support payments to $350 in monthly child support payments. Again, we disagree.

Here, the trial court stated in its final child support order that it considered the parties' financial declarations, which neither party challenged at trial, to calculate its deviation from Andres's standard child support obligation. The trial court noted at the revision hearing that, although Andres had a greater income than Jennifer, he was in a "disparate financial situation" given the number of people in his household who depended on his support. Report of Proceedings (RP) at 34. The trial court further noted that Jennifer did not present any evidence that her expenses had increased and that, even with a downward deviation, she would be receiving an increase in child support payments from Andres. In setting Andres's monthly child support obligation at $350, the trial court rejected his request to set his obligation at $185 per month, stating that a $350 monthly child support obligation "adequately provides and takes into consideration the incomes of both households or resources available in both households as well as the number of people in both households that those resources have to support." RP at 34

On this record, we cannot say that the trial court's decision to order a downward deviation of Andres's monthly child support obligation to $350 per month was "outside the range of acceptable choices, given the facts and the applicable legal standard." *Littlefield*, 133 Wn.2d at 47. Accordingly, Jennifer fails to demonstrate that the trial court manifestly abused its discretion. We therefore affirm the trial court's deviation order and final child support order.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Lee, J.