IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

<table>
<tr><td>In the Matter of the Marriage of</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>No. 73468-7-I</td></tr>
<tr><td>AMBER HANSEN,</td><td>)</td><td>(consolidated w/73860-7-I)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Respondent/</td><td>)</td><td>DIVISION ONE</td></tr>
<tr><td>Cross-Appellant,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>and</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>UNPUBLISHED OPINION</td></tr>
<tr><td>TROY EDWARD HANSEN,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>FILED: October 31, 2016</td></tr>
<tr><td>Appellant/</td><td>)</td><td></td></tr>
<tr><td>Cross-Respondent.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

BECKER, J. — Troy Hansen appeals from decisions regarding property division and child support. Amber Hansen cross appeals from an order requiring the parties to split equally the costs of postsecondary education for the children. We affirm.

Amber and Troy Hansen were married in 2001. They have two children, ages 12 and 7 at the time of the decree in April 2015. Throughout the marriage, Troy's income was the family's primary source of support. He has owned and operated a bail bond company since 1989. Amber did not work outside the home during the marriage. According to undisputed findings of fact, she was financially dependent on Troy from the time their relationship began several years prior to the marriage, when she was 17.

In June 2013, Troy enlarged his business by purchasing a bail bond company in another city. He funded this purchase in part by withdrawing $242,211 from retirement accounts he shared with Amber. As a result of withdrawing retirement funds, the couple incurred taxes and early withdrawal fees totaling $120,136.

Amber filed for divorce in October 2013. After a bench trial, the court determined a 50/50 division of the couple's roughly $9 million estate was fair and equitable. Troy was awarded the business and other assets and was ordered to make an equalizing cash payment to Amber of $596,704. Maintenance was awarded to Amber at the rate of $20,000 per month for 60 months. The court entered additional findings and orders which included: Troy wasted community assets by withdrawing retirement funds; the total value of the business includes the value of real property located in Kent, designated as Troy's separate property; Troy must pay $4,000 per month in child support; and the parties must equally split the costs of postsecondary education support.

## WASTE

When distributing property in a dissolution, a trial court may properly consider one spouse's waste or concealment of assets. In re Marriage of Wallace, 111 Wn. App. 697, 708, 45 P.3d 1131, review denied, 148 Wn.2d 1011 (2003). Washington courts have characterized waste as "negatively productive conduct." In re Marriage of Clark, 13 Wn. App. 805, 808-09, 538 P.2d 145, review denied, 86 Wn.2d 1011 (1975). Waste has also been characterized as "gross fiscal improvidence, the squandering of marital assets, or . . . the deliberate and unnecessary incurring of tax liabilities." In re Marriage of Steadman, 63 Wn. App. 523, 528, 821 P.2d 59 (1991).

2

Here, the court treated the $120,136 in taxes and penalties for withdrawing retirement funds as a "predistribution" to Troy of community assets. Half that amount, or $60,068, was deducted from Troy's share of the 50/50 division of community assets. The court made two findings in support of this decision. First, Troy "wasted community assets by cashing out IRA accounts totaling $242,211 and incurring tax penalties ($24,221) and additional federal income tax ($95,915) and he should be charged with the penalty and additional tax in the total amount of $120,136 as predistributions of property to him." Finding of Fact 2.7(20). Second, due to Troy's "actions in contemplation of divorce, the parties' estate has minimal liquid assets." Finding of Fact 2.11(11). Troy challenges both findings. He asks that the decree be remanded for amendment of the findings and an order requiring Amber to reimburse the sum of $60,068.

We will not disturb findings that are supported by substantial evidence. In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007), review denied, 163 Wn.2d 1055 (2008). Substantial evidence is "'evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1995)), review denied, 148 Wn.2d 1023 (2003).

The trial court heard testimony that Troy's decision to withdraw retirement funds was prudent, despite the penalties incurred for liquidating a retirement account, because it enabled him to expand his business by acquiring a new branch office. The expected return on investment was higher than from the retirement account. On the

3

other hand, the court heard testimony that the parties owned substantial unencumbered property, suggesting that Troy could have financed the transaction from other sources without incurring penalties. And Amber testified that although she agreed to the withdrawal of retirement funds, she was unaware of the financial consequences.

The finding that Troy wasted assets refers to his decision to withdraw retirement funds as a means of funding the purchase, not to his decision to make the purchase. The court perceived that Troy's decision to liquidate the retirement accounts left the community with few liquid assets at a time when divorce was contemplated. Initiation of divorce proceedings is typically expensive for both parties. A shortage of ready cash disadvantages the party who is not in control of the family income. The trial court could reasonably view Troy's decision to incur tax liabilities as negatively productive conduct in the context of its impact on the relative positions of the parties at the time the divorce petition was filed.

We are unpersuaded by Troy's argument that Amber's agreement to the liquidation of the retirement accounts precludes a finding of waste. A spouse's acquiescence in the other's arguably wasteful spending is one factor that may be relevant in analyzing whether waste occurred. See In re Marriage of Williams, 84 Wn. App. 263, 270-71, 927 P.2d 679 (1996) (wife's gambling with husband's knowledge was more like "entertainment costs" than "dissipation of assets"), review denied, 131 Wn.2d 1025 (1997). But acquiescence is not dispositive. It is not clear Amber truly understood Troy's decision to withdraw retirement funds or had any ability to influence it.

The court heard testimony suggesting the couple's relationship was unstable around the time the opportunity to acquire the branch office arose and Troy decided to

take it. Amber testified that she and Troy separated in April 2013, then reconciled in May 2013. Troy denied that his reason for the temporary reconciliation was that he wanted or needed Amber's compliance with the transactions involved in the acquisition. But the trial court was in the better position to weigh his testimony, not this court. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). The finding that Troy's actions caused the parties' estate to have minimal liquid assets and were in contemplation of divorce was an available inference from the evidence presented.

On this record, we conclude that substantial evidence supports the challenged findings regarding Troy's withdrawal of retirement funds.

## SEPARATE PROPERTY

The trial court found that the bail bond company was community property with a value of $2,890,000. The business, the court found, included property located in Kent and valued at $170,000 with no encumbrance, "which is husband's separate property." Finding of Fact 2.7(9)(q).

Troy contends the court erred by including the value of Troy's separate property in the overall valuation of the company and that he should be reimbursed accordingly. Reviewing for substantial evidence, Rockwell, 141 Wn. App. at 242, we conclude the record supports the finding that the company's operations included the Kent property.

A trial court has broad discretion to distribute property in a dissolution based on factors listed in RCW 26.09.080. In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013), review denied, 186 Wn.2d ___, 327 P.3d 54 (2014). "The court may distribute all property, whether categorized as community or separate." Wright, 179 Wn. App. at 261. The court acknowledged the inclusion of the separate Kent property in the

5

valuation of community property. "With due consideration of the criteria set out in RCW 26.09.080, the distribution of property and liabilities as set forth in the decree is fair and equitable regardless of the character of the property before the court and the husband's separate property claims." Conclusion of Law 3.4. Troy has failed to demonstrate that the trial court's division of property was not based on appropriate factors or otherwise constituted an abuse of discretion. We conclude the court did not err by including the value of the Kent property in the valuation of the bail bond business.

## CHILD SUPPORT

Troy challenges the child support order requiring him to make a monthly transfer payment of $4,000. We review child support obligations for an abuse of discretion. In re Marriage of Booth, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). A manifest abuse of discretion occurs where the trial court's decision rests on untenable grounds. In re Marriage of Zacapu, 192 Wn. App. 700, 705, 368 P.3d 242 (2016).

A statutory table establishes presumptive amounts of child support based on the parents' combined monthly net income, up to $12,000. RCW 26.19.020. Under the standard calculation, Troy's monthly transfer payment would have been $1,709. When the parents' combined income is greater than $12,000, as it was in this case, a trial court "may exceed the presumptive amount of support set for combined monthly net incomes of twelve thousand dollars upon written findings of fact." RCW 26.19.065(3). Cursory findings are inadequate. In re Marriage of McCausland, 159 Wn.2d 607, 620, 152 P.3d 1013 (2007). The court must consider, at a minimum, the parents' standard of living and the children's needs. McCausland, 159 Wn.2d at 620-21.

Troy contends comments made by the judge during the proceedings indicate a lack of consideration of the McCausland factors. But what is relevant in determining whether the court followed McCausland is the court's written findings, not the court's oral comments. An "oral decision of the trial court which is inconsistent with its written findings and conclusions may not be used to impeach such findings." In re Marriage of Raskob, 183 Wn. App. 503, 519-20, 334 P.3d 30 (2014).

The court found four reasons for deviating from the standard calculation:

1. The parents' combined monthly income exceeds $12,000 per month.
2. The children's needs and the family's historical child-related expenses.
3. Tax planning
4. Wealth

Troy argues these findings are too cursory to satisfy the McCausland standard.

The court included "the children's needs" as one of its reasons for deviating from the standard calculation. Another reason was "wealth," which implies the court considered the parties' standard of living. And, in a different section, the court found the "standard of living during the marriage was high." Finding of Fact 2.11(6). Amber's reasonable monthly expenses were found to be $24,000, an amount that included expenses related to the children. Finding of Fact 2.11(6). We conclude the findings, although they are skimpy and somewhat vague, are adequate under McCausland; they demonstrate the court based the deviation on appropriate factors.

Nor did the court abuse its discretion when it declined to reconsider the child support order in view of an amendment to the decree adjusting the income figures in a way that lessened the income disparity. Troy again relies on oral comments by the judge, which as previously mentioned do not control this court's analysis. In the

absence of persuasive argument demonstrating an abuse of discretion, we conclude the court did not err by declining to reconsider its child support order.

## POSTSECONDARY SUPPORT

Amber cross appeals the order requiring each party to bear 50 percent of the costs of postsecondary support.

Child support obligations must be equitably apportioned between parents. RCW 26.19.001. Postsecondary educational support is child support, In re Marriage of Daubert, 124 Wn. App. 483, 502, 99 P.3d 401 (2004), abrogated on other grounds by McCausland, 159 Wn.2d 607 (2007), and it "must be apportioned according to the net income of the parents." Daubert, 124 Wn. App. at 505. Troy's proportionate share of the income is 66 percent and Amber's is 34 percent. Amber contends the court erred by ordering them to share the cost equally.

If the facts support a deviation from the standard support obligation, the court may also deviate from a proportionate allocation of extraordinary expenses. In re Yeamans, 117 Wn. App. 593, 600, 72 P.3d 775 (2003); see also In re Marriage of Casey, 88 Wn. App. 662, 667-68, 967 P.2d 982 (1997).

Amber argues against the application of Yeamans and Casey. She implies that a disproportionate allocation of the responsibility for postsecondary support is equitable only if it benefits the parent favored by the deviation from the basic support obligation. For example, in Casey, the trial court granted the mother a deviation from her basic support obligation, reducing her obligation from $25 to zero. Casey, 88 Wn. App. at 665, 667. The father was required to pay 100 percent of the children's transportation costs and extraordinary health care expenses, even though his income constituted only

90 percent of the parties' combined income. Casey, 88 Wn. App. at 667-68. Here, on the other hand, the deviation from the standard child support obligation favors Amber, but the disproportionate allocation of postsecondary support favors Troy.

The trial court did not err. The standard is abuse of discretion, whether the deviation is supported by poverty or by wealth. Because the trial court deviated from the basic support obligation (increasing Troy's obligation from $1,709 to $4,000), the court had discretion to deviate from a proportionate allocation of postsecondary support. The property distribution leaves Amber with considerable wealth. When each child is old enough to undertake postsecondary education, Amber's household expenses may diminish. The record reflects that there is an account in the children's names with a balance of over $100,000, and these funds are intended to go towards college tuition. Under these circumstances, equal sharing of college costs is not inequitable and not an abuse of discretion.

## ATTORNEY FEES

At trial, the court awarded Amber $75,000 in attorney fees based primarily on Troy's intransigence throughout the trial proceedings. The court found the award represented the amount Amber's fees were needlessly increased and also recognized Amber's need to have her attorney fees paid and Troy's ability to pay.

Amber requests an award of attorney fees on appeal. Under RCW 26.09.140, our discretion to award fees is guided by the relative resources of the parties and the merits of their positions on appeal. Troy has not been intransigent in this appeal and the issues he has raised are not frivolous. Amber has substantial wealth, including income-producing assets. We decline to grant Amber's request for fees on appeal.

Affirmed.

WE CONCUR:

_____

Becker, J.

_____

_____

Spearman, J.