FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 JUN 19 AM 9: 14

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
) No. 75343-6-I
FANAYE ZEWDIE ASHAGARI, )
) DIVISION ONE
Respondent, )
) UNPUBLISHED OPINION
and )
)
ZELEKE KASSAHUN, )
)
Appellant. ) FILED: June 19, 2017
)

TRICKEY, A.C.J. — Zeleke Kassahun appealed the decree, the parenting plan, and the child support order resulting from the dissolution of his marriage to Fanaye Ashagari. This court decided that case in March 2015. We remanded for further findings on the issue of Kassahun's gross monthly income for purposes of establishing child support and maintenance awards. We otherwise affirmed the various orders the trial court entered.

Kassahun now appeals the trial court's order and findings on remand. He argues that the trial court's findings are not supported by substantial evidence, that the trial court used incorrect values and methods to calculate his income, that Ashagari's financial declarations were not verified by "[o]ther sufficient verification" under RCW 26.19.071(2), that the trial court misapplied the statutory factors under

RCW 26.09.090 in calculating its maintenance award, and that the trial court erred when it declined to impute income to Ashagari. Finding no error, we affirm.

## FACTS

This court previously stated the relevant underlying facts as follows:

In 1986, [Kassahun] moved to Seattle . . . . He found work driving a taxicab until he purchased a Texaco gas station in 1991.

. . . Kassahun hired [Fanaye Ashagari] to work at his gas station as a cashier. They began a romantic relationship and, in January 1998, they were married. The parties have three children. Ashagari did not return to work outside the home after their first child was born in 2001.

. . . .

The parties bought a home together in 1999. They purchased a taxicab license in 2000. In 2002, they acquired the Abyssinia Market . . . . Over the years they were able to save a large sum of money. In 2011, unbeknown to Ashagari, Kassahun withdrew $187,000 from the joint bank account and invested $180,000 in another taxicab license.

Kassahun paid himself a modest salary from his work at the Abyssinia Market. His tax returns reflected the paychecks he wrote to himself from the business account as well as his income from one of the taxicabs. He reported an income from the taxicab licenses of less than $1,000 a year. But at trial, Kassahun claimed to receive $1,000 each month per taxicab, paid in cash. He provided no documented proof of this income and stated that he does not keep records of the income.

. . . .

Kassahun and Ashagari separated on September 16, 2011.

In re Marriage of Ashagari and Kassahun, No. 71295-1-I, slip op. at 1-3 (Wash. Ct. App. March 23, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/712951.pdf, review denied, 184 Wn.2d 1012 (2015).

2

In July 2012, Ashagari petitioned for dissolution of the parties' marriage. Ashagari submitted a financial declaration that showed that she had total household monthly expenses of $6,485.54.[1] This included payments on the parties' home equity loan and monthly expenses for the parties' children. She estimated that Kassahun earned between $10,000 and $12,000 per month in income from the Abyssinia Market (the Market) and taxicab licenses.

In August 2012, Kassahun filed a financial declaration that stated that his net monthly income was $4,015.56 and his total monthly expenses were $3,110.00. In June 2013, Kassahun submitted an amended financial declaration that stated his gross monthly income consisted of $3,000 in wages, $2,000 in business income from his taxicab licenses, and $1,500 in other income. He declared that his total monthly expenses were $3,682.

The trial court issued a temporary order of child support requiring Kassahun to pay a monthly transfer amount of $2,111.26. The court imputed $11,000 in net monthly income to Kassahun, based on its finding that his income was unknown. The trial court imputed $1,500 of income per month to Ashagari. It also issued a temporary restraining order and an order of temporary relief requiring Kassahun to pay $1,000 per month in maintenance and pay the household bills.

Kassahun testified that these obligations made him destitute.[2] Prior to trial, Kassahun obtained $50,000 from Taketu Truneh, allegedly to help pay his support

---

[1] Ashagari filed a new financial declaration in June 2013 that listed her household monthly expenses at $6,667.54.

[2] There are conflicting accounts as to whether Kassahun was destitute in 2012. For example, Kassahun voluntarily paid the family's household expenses after moving out in September 2011. He stopped making payments and claimed he was destitute after Ashagari filed for divorce. Further, he leased a new Mercedes-Benz automobile in

3

obligations; $9,000 remained at the time of trial. The trial court found these claims to be not credible. For example, Kassahun used part of these funds for personal expenses and attorney fees.

At trial, Kassahun testified that he had a gross monthly income of $3,000, income from two taxicab licenses of $2,000 per month,[3] and an additional $1,200 to $1,500 per month taken from the Market to pay personal expenses and a shareholder loan. He testified that his net monthly income was $4,714 and his monthly expenses were $3,682. His testimony was corroborated by Steven Kessler, a certified public accountant who had reviewed Kassahun's financial records.

The trial court found that Kassahun's total gross monthly income was $13,750. In re Ashagari, No. 71295-1-I, slip op. at 13. The trial court found that the tax returns presented by the parties were unreliable due to Kassahun's low reported gross monthly income relative to his monthly expenses. In re Ashagari, No. 71295-1-I, slip op. at 13. Also, Kassahun's testimony indicated that he realized untaxed income from several sources.[4] Based on its calculation of his gross monthly income, the trial court ordered Kassahun to pay $1,347.72 per month in child support and $5,000 per month in maintenance to Ashagari.

---

February 2013 and incurred numerous personal expenses between when the divorce was filed and trial.

[3] Kassahun did not report his income from at least one of the taxicabs to the IRS.

[4] At trial, Kassahun testified that he paid several Abyssinia Market employees in cash obtained from sales, which was unreported and untaxed. He also testified that he received cash payments from his two taxicab drivers but did not keep records, and only reported income from one of the taxicabs on his personal income taxes.

On appeal, this court concluded that the trial court's findings for its calculation of Kassahun's gross monthly income were insufficient to permit review. In re Ashagari, No. 71295-1-I, slip op. at 13. This court remanded for further findings on the calculation of Kassahun's gross monthly income, and recalculation of Kassahun's maintenance and support obligations if necessary. In re Ashagari, No. 71295-1-I, slip op. at 15.

On remand, the trial court determined that it had erred when it calculated Kassahun's income, and found instead that his gross monthly income was $12,750. It based its determination on its previous findings, its oral ruling in July 2013, and additional findings on remand. Also, the trial court changed the method it used to compute Kassahun's taxes so that his tax liability decreased by approximately $1,000. This increased his net monthly income from $4,814.34 to $5,399.52. The trial court adjusted Kassahun's child support obligation to $1,696 per month but did not change his $5,000 per month maintenance obligation. Although the order of child support on remand was effective as of November 13, 2013, the trial court used the current ages of the children, rather than the ages of the children when the original order of child support was entered, to calculate Kassahun's support obligation. This increased his monthly transfer amount to $1,592.73.

Kassahun appeals.

ANALYSIS

Trial court decisions in dissolution proceedings are reviewed for manifest abuse of discretion, and are rarely changed on appeal. In re Marriage of Griffin,

114 Wn.2d 772, 776, 791 P.2d 519 (1990) (citing In re Marriage of Landry, 103 Wn.2d 807, 809, 699 P.2d 214 (1985)). The party challenging a decision by the trial court in a dissolution proceeding bears the burden of showing that the court manifestly abused its discretion. Griffin, 114 Wn.2d at 776.

"A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

Littlefield, 133 Wn.2d at 47.

### Kassahun Gross Monthly Income

Kassahun argues that the trial court abused its discretion in determining his child support obligation because it was based on an erroneous calculation of his gross monthly income. He assigns error to a number of the trial court's findings on remand and also argues that the trial court improperly relied on the financial declarations submitted by the parties to calculate his gross monthly income.

*Findings on Remand*

Kassahun assigns error to a number of the trial court's findings on remand related to its calculation of his gross monthly income. He argues that these findings were not supported by substantial evidence in the record. We conclude that substantial evidence does support these findings.

"[F]indings of fact supported by substantial evidence will not be disturbed on appeal." Bering v. Share, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). "'Substantial evidence' is evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise." In re Parental Rights of E.D., 195 Wn. App. 673, 688, 381 P.3d 1230 (2016) (quoting Bering, 106 Wn.2d at 220), review denied, 187 Wn.2d 1018 (2017). Both circumstantial and direct evidence may be considered. State v. Gosby, 85 Wn.2d 758, 766-67, 539 P.2d 680 (1975).

"Questions of credibility are uniquely and exclusively within the province of the trial court," and this court will not disturb such determinations on appeal. Miller v. McCamish, 78 Wn.2d 821, 831, 479 P.2d 919 (1971).

Unchallenged findings of fact are verities on appeal. State v. Stenson, 132 Wn.2d 668, 697, 940 P.2d 1239 (1997).

a. Reliability of Tax Returns

Kassahun first assigns error to the trial court's finding that his tax returns were not reliable and that he admitted as much. The record contains several indications that Kassahun's tax returns would not be reliable measures of his income. For example, Kassahun testified that he received $1,000 a month in cash from each of his two taxicab licenses. But he stated that he only reported income for one of the taxicabs and did not keep records of the income he received. Further, Kassahun testified that he used funds from his business to pay for personal expenses,[5] and did not keep records separating personal expenses from

---

[5] For example, a payment to Vern Fonk Insurance because of a DUI and paying off various personal credit cards.

7

business expenses. Therefore, the record contains substantial evidence supporting the trial court's finding that Kassahun's tax returns were not reliable measures of his income. The trial court's statement that Kassahun admitted to this is reasonably interpreted as a reference to his own admissions that he did not report income on his tax returns and used business funds to pay personal expenses.

Kassahun, relying on In re Marriage of Mansour, argues that the trial court had to find an error in the tax return itself before finding it was unreliable. 126 Wn. App. 1, 106 P.3d 768 (2004). In Mansour, the trial court found that Mr. Mansour's tax returns were not an accurate measure of his income because he took tax deductions that he was not entitled to. 126 Wn. App. at 13. But the reviewing court did not hold that errors in the tax return itself are the only appropriate basis for deciding that a tax return is unreliable. Kassahun's own testimony showing that his tax returns were unreliable constituted substantial evidence supporting the trial court's finding.

b. Reliability of Wage Statements

Kassahun next assigns error to the trial court's finding that Kassahun's wage statements were not a reliable measure of his income because he paid himself a "very small wage."[6] Kassahun argues that the record does not show that his wage was "very small," or that the wage statements are unreliable. Kassahun does not elaborate on his challenge to the trial court's finding that he paid himself a "small wage."

---

[6] Br. of Appellant at 2.

8

The trial court's finding reads, "The Respondent's wage statements are not a reliable indicator of his income due to the fact that he pays himself a very small wage and used the same credit cards to purchase the inventory for his grocery store and to pay the family's expense."[7] Kassahun reported that he paid himself a pretax wage of $3,000 per month from the Market. But he also wrote checks to himself out of the Market's funds to pay personal expenses, used business credit cards for personal expenses, and took cash from the Market in addition to his reported wages. Further, the record shows that Kassahun had significant personal expenses, many of which he paid using cash, which exceeded the reported expenditures from his personal bank account. Taken together, the record demonstrates that Kassahun's spending behaviors did not match the $3,000 per month wage he paid himself from the Market. The trial court's finding that Kassahun's wage statements were unreliable was supported by substantial evidence.

c. Failure to Segregate Business and Personal Expenses

Kassahun assigns error to the trial court's finding that he used the same credit cards for business and personal expenses, and that he did not segregate his personal expenses and report them as income. This finding is supported by substantial evidence. Kassahun concedes that he testified at trial that he used business credit cards to pay for personal expenses. Furthermore, Kassahun took thousands of dollars from the Market, in addition to his wages, in 2012 alone.[8]

---

[7] Clerk's Papers (CP) at 394.
[8] Ex. 55.

9

Kassahun argues that he "did try to segregate those items and report them as income," but does not support this argument with citations to the record.[9] He also argues that these expenses were included in the $1,200 to $1,500 per month he and Kessler testified that he took from the Market to cover personal expenses. Kessler did not review Kassahun's credit card statements for any year. Kessler did not review Kassahun's personal bank statements from 2011 to 2013 in-depth. The testimony offered by Kassahun and Kessler is insufficient to overcome the substantial evidence in the record that Kassahun used business credit cards to pay personal expenses and failed to segregate these charges or declare them as income.

d. Use of Business Cash

Kassahun assigns error to the trial court's finding that he had access to large amounts of cash through his business, which he used to pay his employees and for other personal expenses. Kassahun testified that he paid his employees in cash "out of the till."[10] He used funds from his business to pay for personal expenses. He testified that he used his Macy's credit card and cash to pay for his supervised visitation with his children. He also used cash to pay for a number of personal expenses, including gas, recreational activities with his children, and a domestic violence treatment program, in amounts that exceeded his reported expenditures from his personal bank account. In sum, Kassahun testified to a pattern of using business funds to pay for personal expenses, and his cash

---

[9] Br. of Appellant at 26.
[10] Br. of Appellant at 26; see Report of Proceedings (July 15, 2013) at 562-63.

10

expenditures did not match his reported payments from his personal bank account. Accordingly, substantial evidence supports this finding of fact.[11]

e. Credit Card Debt

Kassahun assigns error to the trial court's finding that the parties did not have credit card debt, and that they paid for expenses from the cash flow of the Market and taxicab licenses and managed to save enough to purchase a second taxicab license. Substantial evidence supports this finding as well. The financial declarations submitted by the parties in 2012 did not list credit card debt. In 2011, the family had savings of $187,000, and Kassahun used $180,000 to invest in a second taxicab license.

Kassahun argues that at the time of trial he did have credit card debt. He testified that he incurred $5,000 of debt on his AAA Visa card in March 2013 to pay for attorney fees, and that AAA Visa sent him a check for a $6,000 cash advance to put toward the debt. Other than the AAA Visa statement showing the deposit of $6,000, Kassahun did not offer documentary evidence to support his claim. The trial court was free to disregard Kassahun's self-serving statement if it did not find him credible. His argument is insufficient to show that the trial court's finding was not supported by substantial evidence.

f. TaxiCab License Undocumented Income

Kassahun assigns error to the trial court's finding that he had undocumented income from the two cab licenses. He argues that his income from

_____

[11] Kassahun also argues that there was no evidence that this cash was unreported or came from an unverified source. The challenged finding does not say that the cash from the Market was unreported or unverified.

11

the taxi licenses was in fact documented on his tax returns, bank records, and quarterly reports to the Department of Labor and Industries and the Department of Revenue. But, while the record shows the income that Kassahun reported, Kassahun did not provide any documentation of the actual income he received. And evidence suggests there was unreported income. For example, Kassahun's tax returns for 2011 show that he reported only $755 of profit from the taxicab licenses.[12] He testified that he was paid $1,000 in cash per month from each of his taxicab licenses, but almost all of his profits went toward paying the taxicabs' expenses. He does not cite any documentary evidence showing that he was in fact paid $1,000 per month per taxicab, or evidence supporting his argument that essentially all of these profits went toward maintaining the taxicabs. In fact, he testified that he did not keep a ledger or other record of the money he received. The trial court's finding that Kassahun did not document his income from the taxicab licenses was supported by substantial evidence.

g. Parties' Total Monthly Expenditures

Kassahun argues that the trial court's finding that the parties' total monthly expenditures were $8,700 was not supported by substantial evidence. Kassahun alleges that the trial court did not sufficiently explain which expenses it considered or what duplications it eliminated. The trial court stated that it "looked at the expenditures that the parties submitted in these financial declarations under

---

[12] As discussed above, Kassahun only reported income for one of his taxicab licenses on his tax returns. At trial, he testified that he received $1,000 in cash per month from each of his two taxicabs. The total listed income of $23,752 appears to possibly include the alleged income from both taxicabs. Neither party addresses this discrepancy in depth.

penalty of perjury and eliminated duplications. The Court added up the expenses, minus Mr. Kassahun's housing and utilities, and reached a figure of about $8,700."[13] Each party's financial declaration lists monthly expense information. The trial court set forth its methodology for reaching its final figure. The record contains substantial evidence showing the basis for the trial court's decision.

h. Kassahun Saving Ability

Kassahun argues that the trial court's finding that Kassahun was able to save approximately $1,500 per month during the parties' marriage was not supported by substantial evidence. The parties were married in January 1996. In re Ashagari, No. 71295-1-I, slip op. at 2. In 2011, Kassahun withdrew $187,000 from the parties' joint bank account. In re Ashagari, No. 71295-1-I, slip op. at 2. The trial court's finding that this figure represented savings the parties had accrued over 10 years was supported by substantial evidence in the record.

i. Credibility of Witnesses

Kassahun assigns error to the trial court's finding that Kessler, Kassahun's expert, was not credible because he did not have access to sufficient records and did not provide a reliable estimate of the amount of cash available to Kassahun. Kessler's testimony demonstrates that the trial court had reason to question Kessler's credibility. Kessler stated that he based his valuation on the wages Kassahun paid himself from the Market, Kassahun's income from the taxicab licenses, income from his shareholder loan, and normalization for Kassahun's use of business funds for personal expenses. But Kessler also testified that he did not

---

[13] CP at 396.

review Kassahun's personal bank statements extensively, and did not review Kassahun's credit card statements at all. The court's finding that Kessler was not credible is supported by substantial evidence in the record.

Kassahun also assigns error to the trial court's finding that Kassahun was not credible when he testified he was forced to borrow money for his maintenance and child support obligations because he used the money for personal expenses and attorney fees. This court does not review credibility determinations.

*Calculation of Kassahun's Gross Monthly Income*

Kassahun argues that this court should vacate the trial court's maintenance and child support orders. He contends that the trial court abused its discretion by calculating his income based on the expenditures alleged in the parties' financial declarations. Because courts may look to financial declarations to calculate the gross income of parties and the trial court's underlying findings of fact were supported by substantial evidence, we disagree.

When the court determines the child support obligation of each parent, it should consider "[a]ll income and resources of each parent's household." RCW 26.19.071(1). When calculating a parent's gross monthly income, the court includes income from many different sources, including salaries, wages, income from second jobs, maintenance actually received, and income from self-employment or proprietorship of a business. RCW 26.19.071(3).

Offered income and deductions must be verified by tax returns for the past two years or current paystubs, and "[o]ther sufficient verification" is required to

14

verify "income and deductions which do not appear on tax returns or paystubs." RCW 26.19.071(2).

"RCW 26.19.071(1) does not require that the court make a precise determination of income. Instead, the court is required to consider all income and resources of each parent's household." In re Marriage of Marzetta, 129 Wn. App. 607, 623, 120 P.3d 75 (2005). An appellate court "must presume that the [trial] court considered all evidence before it in fashioning [an order of child support]." In re Marriage of Kelly, 85 Wn. App. 785, 793, 934 P.2d 1218 (1997).

A trial court's determination of child support is reviewed for abuse of discretion. In re Marriage of Fiorito, 112 Wn. App. 657, 663, 50 P.3d 298 (2002). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds, including an erroneous view of the law. Fiorito, 112 Wn. App. at 663-64.

*Use of Financial Statements*

Kassahun first argues that the trial court erroneously relied on the financial declarations of the parties to calculate his gross monthly income. Because courts may look to the parties' financial declarations when calculating income, we disagree.

A trial court may consider the financial declarations submitted by parties throughout dissolution proceedings. See, e.g., In re Marriage of Zacapu, 192 Wn. App. 700, 709, 368 P.3d 242 (2016) (trial court did not abuse its discretion when it considered the parties' financial declarations to calculate a deviation from the obligor's standard calculation); In re Marriage of Ayyad, 110 Wn. App. 462, 474,

38 P.3d 1033 (2002) (consideration of stock options listed in financial declaration when determining financial status of the parties when evaluating attorney fee award); Brandli v. Talley, 98 Wn. App. 521, 527, 991 P.2d 94 (1999) (trial court erred when it denied party's request for deviation when it failed to consider substantial assets listed in opposing party's financial declaration). These cases demonstrate that Washington trial courts have frequently looked to the financial declarations submitted by the parties during a dissolution proceeding.

Here, the trial court found that the parties' monthly expenses totaled approximately $8,700 by adding up the expenses in their financial declarations and subtracting Kassahun's housing and utilities. It used this value and the parties' saving ability to reach a net monthly income, adjusted for taxes, and found that Kassahun's gross monthly income was $12,750. The trial court did not abuse its discretion when it used the financial declarations of the parties to calculate Kassahun's income for purposes of determining its final order of child support.

Kassahun cites In re Marriage of Trichak to argue that this court has rejected the use of financial declarations to verify income, and instead requires the use of tax returns. 72 Wn. App. 21, 26-27, 863 P.2d 585 (1993). Kassahun misconstrues the holding of Trichak. There, Mr. Trichak contended that the trial court erred in using the $1,255 figure listed on Ms. Trichak's support schedule worksheet as her gross monthly income instead of the $2,000 figure provided on her financial affidavit. 72 Wn. App. at 23. The Court of Appeals disagreed, because the value listed on the financial affidavit was marked as an estimate and

the support schedule figure was supported by Ms. Trichak's reliable tax returns. Trichak, 72 Wn. App. at 26-27.

Kassahun next argues that the expenditures listed in the financial declarations of the parties are inherently less reliable than the incomes listed in the financial declarations. He does not cite to legal authority in support of this argument. He has not otherwise shown that the use of the expenditures listed in financial declarations is in and of itself an abuse of discretion by the trial court.

Kassahun argues that the only calculation of income that the record supports is approximately $6,500, consisting of the $3,000 in W-2 wages from the Market, $2,000 per month in income from the taxicab licenses, and $1,500 per month of business expenses to cover personal expenses listed in his financial declaration. He also relies on his testimony that he was compelled to borrow $50,000 to meet his child support and maintenance obligations in 2012.

The figures Kassahun offered necessarily rely on the accuracy of his tax returns and the credibility of his testimony at trial. But as discussed above, the trial court's findings that Kassahun's documents and testimony were unreliable were supported by substantial evidence. Further, Kassahun does not challenge the trial court's finding that Kassahun's claims that he was destitute and was forced to borrow money to meet his obligations were not credible because he used the funds for personal expenses and attorney fees. Therefore, it was within the trial court's discretion to look to the sworn financial declarations of the parties, rather than the

financial documents and testimony submitted by Kassahun, to calculate Kassahun's gross monthly income.[14]

*Use of Saving Ability to Calculate Kassahun's Gross Monthly Income*

Kassahun argues that the trial court erred when it considered his ability to save during the parties' marriage in its calculation of his gross monthly income. Specifically, he argues that there was no evidence that he had any ability to save money at the time the trial court entered its order of child support in November 2013. Because he has not offered persuasive legal authority or citations to the record in support of this argument, we disagree.

Kassahun cites In re Marriage of Scanlon, 109 Wn. App. 167, 34 P.3d 877 (2001) and In re Marriage of Payne, 82 Wn. App. 147, 916 P.2d 968 (1996). The Scanlon court involved a former husband's request for downward modification of his child support obligation, as well as reallocation of visitation-related travel expenses and federal income tax credits. 109 Wn. App. at 171. The Payne court held that past earnings were not a relevant measure of gross monthly income where a party's income had changed. 82 Wn. App. at 152.

Neither case supports Kassahun's position. Scanlon involved a motion to modify an existing child support obligation in light of an alleged reduction in income. Similarly, Payne involved a reduction in a party's income that rendered past earnings irrelevant. Here, the record does not show that Kassahun's income

---

[14] The trial court provided an alternate method of calculating Kassahun's gross monthly income based on Kassahun's monthly expenditures. Because the trial court did not abuse its discretion when it looked to the parties' financial declarations to calculate Kassahun's gross monthly income, we need not review its alternate calculation method.

18

or ability to save changed from the time the parties were married until the trial court entered its order of child support.

Kassahun also argues that his being forced to take out a loan to meet his support obligations demonstrates that he had no ability to save at the time the trial court entered its order of child support. But the trial court found that Kassahun's claim that he was forced to borrow money was not credible, a finding that Kassahun does not challenge on appeal. Moreover, Kassahun leased a new Mercedes in February 2013 despite his claims of poverty beginning in October 2012. Kassahun's citation to the purported loan does not support his claim that his ability to save had changed.

In sum, Kassahun has not demonstrated that his income or ability to save changed significantly in the time between the parties' filing of financial documents and the trial court's final order.

*Total Gross Monthly Income*

Kassahun assigns error to the trial court's finding that his gross monthly income was $12,750. Because the trial court did not abuse its discretion when it looked to the parties' financial declarations to calculate Kassahun's gross monthly income and its underlying findings of fact were supported by substantial evidence, we find no error.[15]

---

[15] Ashagari attached the trial court's "Final Order and Findings on Petition to Modify Child Support and Maintenance Order, Corrected to add debtor and creditor names to ¶ 1" to her appellate brief. She refers to the final order several times in support of her arguments regarding Kassahun's gross monthly income and the trial court's decision to not impute maintenance to her. The order and findings on remand at issue in the present appeal was entered March 17, 2016, while the final order was entered May 26, 2016. The final order is subject to a separate appeal. Court of Appeals No. 75496-3-I. Kassahun filed a motion to strike the final order and all references thereto on February 23, 2017. The final order

Verification of Expenditures by Other Sufficient Verification

Kassahun argues that the trial court's maintenance and child support orders are erroneous because they relied on the expenditures alleged in the parties' financial declarations, which were not sufficiently supported by "[o]ther sufficient verification," as required by RCW 26.19.071(2). Because Ashagari submitted substantial financial documentation in support of her claimed expenses and testified to them at trial, we conclude that they were supported by other sufficient verification.

"Tax returns for the preceding two years and current paystubs shall be provided to verify income and deductions. Other sufficient verification shall be required for income and deductions which do not appear on tax returns or paystubs." RCW 26.19.071(2). This verification may be through adequate independent records documenting actual income. In re Marriage of Bucklin, 70 Wn. App. 837, 841, 855 P.2d 1197 (1993).

Trial court decisions in dissolution proceedings are reviewed for manifest abuse of discretion. Landry, 103 Wn.2d at 809.

Kassahun argues that Ashagari did not provide independent records supporting her claimed expenses.[16] But Ashagari submitted large numbers of financial documents for the trial court's consideration. These included income tax records, credit card statements, bank statements, checks, home mortgage

_____

is not properly before this court and has been offered for an improper purpose. Thus, we grant Kassahun's motion to strike the final order.

[16] In his reply brief, Kassahun argues for the first time that these documents are hearsay because they were not sufficiently authenticated or verified. ER 802. We need not address this argument. RAP 10.3(c).

records, business records, and records of household expenses. Ashagari also testified at trial about her claimed expenses. The trial court did not abuse its discretion when it looked to these documents and Ashagari's testimony at trial as "[o]ther sufficient verification" of her claimed expenses. RCW 26.19.071(2).

Among his general challenges to Ashagari's claimed expenses as lacking verification, Kassahun argues that she erroneously claimed an expense for installment payments for the home equity loan. Kassahun argues that the Market itself made these payments, not Ashagari.

This court will not disturb a trial court's credibility determinations. Currier v. Northland Servs., Inc., 182 Wn. App. 733, 741, 332 P.3d 1006 (2014), review denied, 182 Wn.2d 1006 (2015).

Kassahun did not submit documentary evidence supporting his claim that the Market paid for the home equity loan, rather than the family. The Chase home equity statements submitted by Ashagari shows that the home equity loan listed both her and Kassahun, and installment payments of $730.28 were made in October 2011 and April 2012. The trial court's findings show that it did not find Kassahun's self-serving and unsupported testimony credible, and we will not disturb that determination on appeal.

## Maintenance Award

Kassahun argues that the trial court abused its discretion because its maintenance award did not show that it had fairly considered the relevant statutory factors. Because the trial court referred to the statutory factors in its initial findings

21

and reiterated that it found that Kassahun could meet his obligations on remand, we disagree.

In a dissolution proceeding, the court may grant a maintenance award for either spouse or domestic partner. RCW 26.09.090(1). The court may enter a maintenance order for an amount and length of time the court deems just, without regard to misconduct. RCW 26.09.090(1). The statute includes a nonexclusive list of factors a court may consider, including the financial resources of the party seeking maintenance, the standard of living established during the marriage, and the ability of the obligor spouse to pay maintenance while meeting his or her own needs. RCW 26.09.090(1)(a)-(f).

An award of maintenance is within the trial court's discretion. In re Marriage of Matthews, 70 Wn. App. 116, 123, 853 P.2d 462 (1993). A trial court abuses its discretion if its award of spousal maintenance does not evidence a fair consideration of the statutory factors used in determining its award. Spreen v. Spreen, 107 Wn. App. 341, 349, 28 P.3d 769 (2001).

In its initial findings, the trial court explicitly referred to the factors listed in RCW 26.09.090. It found that Kassahun had significant earning capacity and financial resources, including those he did not disclose. It also considered that Ashagari had few job skills, and found that maintenance was necessary to allow her to attend school and obtain additional training. On remand, the trial court stated that its previous maintenance award would remain unchanged. The trial court properly considered the factors contained in RCW 26.09.090, and thus did not abuse its discretion.

22

Kassahun argues that the trial court abused its discretion by finding that he had an earning capacity and financial resources that exceeded what he claimed. As discussed above, the trial court's findings that Kassahun did not report all of his income on his tax returns, used business funds for personal expenses, and was not credible when testifying to his financial status were supported by substantial evidence. He does not offer new arguments for why the trial court's finding was not supported by substantial evidence.

Kassahun also argues that the trial court abused its discretion when it found that he could pay $5,000 per month in maintenance while still meeting his financial obligations. He does not offer citation to the record or further argument establishing that he is unable to pay. This is insufficient to show that the trial court abused its discretion.

### Trial Court Bias

Kassahun argues that the trial court's rulings were the result of bias against him or based on a consideration of his fault or misconduct.[17] Because Kassahun has not offered any evidence or supporting authority for his arguments, we conclude that Kassahun has not shown that the trial court was biased against him.

A court may not consider a party's misconduct when determining a maintenance award. RCW 26.09.090(1); In re Marriage of Muhammad, 153 Wn.2d 795, 803-04, 108 P.3d 779 (2005).

---

[17] In his reply brief, Kassahun cites to the court's finding that he engaged in marital misconduct. In the trial court's original findings in support of its parenting plan, the court noted that Kassahun's history of domestic violence necessitated restrictions under RCW 26.09.191. The trial court's decision regarding the parenting plan is not at issue in this appeal, and there is nothing to indicate that this finding impacted its decisions regarding Kassahun's gross monthly income.

23

We presume that a trial judge properly discharged her official duties without bias or prejudice. Jones v. Halvorson-Berg, 69 Wn. App. 117, 127, 847 P.2d 945 (1993) (citing Kay Corp. v. Anderson, 72 Wn.2d 879, 885, 436 P.2d 459 (1967)). The party seeking to overcome that presumption must provide specific facts establishing bias. State v. Post, 118 Wn.2d 596, 619 n.9, 826 P.2d 172, 837 P.2d 599 (1992).

The only grounds Kassahun relies on to demonstrate bias are allegedly erroneous legal decisions made by the trial court. He first argues that the trial court's methods of calculating his income on remand were "patently flawed" and constituted an abuse of discretion because the trial court decreased its calculation of his gross monthly income but changed the way it calculated his taxes so that his net monthly income increased by $1,000.[18] Kassahun does not cite to legal authority in support of this argument. He has also not demonstrated that the trial court is restricted to its original method of calculating his gross monthly income on remand. This is insufficient to overcome the presumption that the trial court did not act with bias or prejudice towards Kassahun.

Kassahun next argues that the trial court abused its discretion when it used the current ages of the children when it entered its order of child support on remand in November 2013, rather than the ages of the children when the original order of child support was entered.[19] Again, he does not cite to legal authority in support

---

[18] Br. of Appellant at 45-46.

[19] In his reply brief, Kassahun argues for the first time that the trial court erroneously divided the parties' property in favor of Ashagari. RCW 26.09.080. We decline to reach this issue. RAP 10.3(c).

of his argument that this constituted an abuse of discretion. He has not shown that the trial court had to use the children's ages when it entered its original order as opposed to its new order created on remand. This is insufficient to overcome the presumption that the trial court did not act with bias or prejudice towards Kassahun.

Kassahun's unsupported allegations of bias or improper consideration of misconduct or fault are insufficient to show that the trial court abused its discretion when it recalculated his gross monthly income or when it used the current ages of the children when constructing its award of child support on remand.

Imputation of Income to Ashagari

Kassahun argues for the first time on appeal that the trial court abused its discretion by declining to impute income to Ashagari. "The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). Kassahun did not challenge the trial court's refusal to impute income to Ashagari in his first appeal, and the case was remanded for the specific purpose of the trial court making specific findings to support its determination of Kassahun's income. In re Ashagari, No. 71295-1-I, slip op. at 14. Because Kassahun raises this argument for the first time in his second appeal in the case, we decline to reach the merits of the issue.

Attorney Fees and Costs

Ashagari requests that this court order Kassahun to pay her reasonable attorney fees and costs.

In a dissolution proceeding, the court may order a party to pay the reasonable attorney fees and costs of the other party after considering the financial

25

resources of both parties. RCW 26.09.140. Upon an appeal, the appellate court has the discretion to order a party to pay the other party's reasonable attorney fees and appellate costs. RCW 26.09.140. In exercising its discretion, the reviewing court "consider[s] the arguable merit of the issues on appeal and the parties' financial resources." In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997), aff'd, 136 Wn.2d 800, 966 P.2d 1247 (1998).

Ashagari has no ability to pay because her income goes toward the payment of household expenses. In contrast, on remand Kassahun was found to have a monthly income of $12,750. In light of the relative financial resources of the parties, we award Ashagari her reasonable attorney fees and costs under RCW 26.09.140.

Ashagari was represented on appeal free of charge by the Northwest Justice Project, a publicly-funded organization that bears the costs of representing its clients. Whether a litigant is represented by a nonprofit legal aid program or a private practitioner is irrelevant to the issue of whether a successful litigant is entitled to reasonable attorney fees. See Tofte v. Dep't of Social & Health Servs., 85 Wn.2d 161, 165, 531 P.2d 808 (1975).

Affirmed.

Trickey, ACJ

WE CONCUR:

Cox, J.

26